**IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT
No. 24-60370**

PRISCILLA STERLING, INDIVIDUALLY AND ON BEHALF OF ALL
OTHERS SIMILARLY SITUATED; RAINE BECKER, INDIVIDUALLY AND
ON BEHALF OF ALL OTHERS SIMILARLY SITUATED; SHAWN MILLER,
INDIVIDUALLY AND ON BEHALF OF ALL OTHERS SIMILARLY
SITUATED; JOHN BENNETT,

*Plaintiffs–Appellants*

v.

THE CITY OF JACKSON; MISSISSIPPI, CHOKWE A. LUMUMBA; TONY
YARBER; KISHIA POWELL; ROBERT MILLER; JERRIOT SMASH;
TRILOGY ENGINEERING SERVICES L.L.C.,

*Defendants–Appellees*

On Appeal from the United States District Court for the Southern District of
Mississippi, Northern Division, Civil No. 3:22-cv-00531-KHJ-MTP

**BRIEF OF APPELLEES THE CITY OF JACKSON,**

**MISSISSIPPI, MAYOR CHOKWE A. LUMUMBA, TONY YARBER,**

**KISHIA POWELL, ROBERT MILLER, AND JERRIOT SMASH**

Clarence Webster, III (MSB No. 102111)
Kaytie M. Pickett (MSB No. 103202)
Adam Stone (MSB No. 10412)
Abbey A. Reeves (MSB No. 105720)
Dakota J. Stephens (MSB No. 106695)
3100 North State Street, Ste. 300 (39216)
P.O. Box 427
Jackson, MS 39205-0427
Tel: (601) 949-4900

cwebster@joneswalker.com
kpickett@joneswalker.com
astone@joneswalker.com
areeves@joneswalker.com
dstephens@joneswalker.com

Sheridan A. Carr (MSB No. 106276)
Office of City Attorney
P.O. Box 2779
Jackson, MS 39207
Tel: (601) 960-1799
scarr@jacksonms.gov

John F. Hawkins (MSB No. 9556)
Hawkins Law, P.C.
226 North President Street (39201)
P.O. Box 24627
Jackson, MS 39225-4627
Tel: (601) 969-9692
john@hgattorneys.com

*Counsel for the City of Jackson*

John F. Hawkins (MSB No. 9556)
Hawkins Law, P.C.
226 North President Street (39201)
P.O. Box 24627
Jackson, MS 39225-4627
Tel: (601) 969-9692
john@hgattorneys.com

*Counsel for Chokwe A. Lumumba and
Robert Miller*

Terris C. Harris (MSB No. 99433)
The Cochran Firm-Jackson, LLC
197 Charmant Place, Suite 2
Ridgeland, MS 39157
Tel: (601) 790-7600
tharris@cochranfirm.com

*Counsel for Tony Yarber, Kishia Powell
and Jerriot Smash*

#102836964v12

**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE FIFTH CIRCUIT**
**No. 24-60370**

PRISCILLA STERLING, INDIVIDUALLY AND ON BEHALF OF ALL
OTHERS SIMILARLY SITUATED; RAINE BECKER, INDIVIDUALLY AND
ON BEHALF OF ALL OTHERS SIMILARLY SITUATED; SHAWN MILLER,
INDIVIDUALLY AND ON BEHALF OF ALL OTHERS SIMILARLY
SITUATED; JOHN BENNETT,

*Plaintiffs–Appellants*

v.

THE CITY OF JACKSON; MISSISSIPPI, CHOKWE A. LUMUMBA; TONY
YARBER; KISHIA POWELL; ROBERT MILLER; JERRIOT SMASH;
TRILOGY ENGINEERING SERVICES L.L.C.,

*Defendants–Appellees*

On Appeal from the United States District Court for the Southern District of
Mississippi, Northern Division, Civil No. 3:22-cv-00531-KHJ-MTP

**CERTIFICATE OF INTERESTED PARTIES**

Counsel for Defendants–Appellees City of Jackson, Mississippi, Mayor

Chokwe A. Lumumba, Tony Yarber, Kishia Powell, Robert Miller and Jerriot

Smash (collectively the City Defendants) certify the following listed persons and

entities as described in the fourth sentence of Fifth Circuit Rule 28.2.1 have an

interest in the outcome of this case. These representations are made so the Judges

of this Court may evaluate possible disqualification or recusal.

i

1.      Defendant-Appellee City of Jackson, Mississippi;

2.      Defendant-Appellee Mayor Chokwe A. Lumumba;

3.      Defendant-Appellee Tony Yarber;

4.      Defendant-Appellee Kishia Powell;

5.      Defendant-Appellee Robert Miller;

6.      Defendant-Appellee Jerriot Smash;

7.      Clarence Webster, III, Kaytie M. Pickett, Adam Stone, Abbey Reeves, Dakota Stephens, and Jones Walker, LLP, counsel for the City of Jackson;

8.      Drew Martin, Sheridan Carr, and the Office of the City Attorney, counsel for the City of Jackson;

9.      John Hawkins and Hawkins Law, PC, counsel for the City of Jackson, Mayor Chokwe A. Lumumba, and Robert Miller;

10.     Terris Harris and The Cochran Firm, counsel for the City of Jackson, Tony Yarber, Kishia Powell, and Jerriot Smash;

11.     Defendant-Appellee Trilogy Engineering Services, LLC;

12.     Davide Macelloni, Jeremy Daniels, and Daniels, Rodriguez, Berkley, Daniels & Cruz, P.A., counsel for Trilogy Engineering Services, LLC;

13.     D. Jason Childress and Fletcher & Sippel, LLC, counsel for Trilogy Engineering Services, LLC;

14.     Plaintiff-Appellant Raine Becker;

15.     Plaintiff-Appellant John Bennett;

16.     Plaintiff-Appellant Shawn Miller;

17.     Plaintiff-Appellant Priscillia Sterling;

18.     Honorable Robert Gibbs and Gibbs Travis, PLLC, counsel for Plaintiffs;

19.     Mark Chalos, Tiseme Zegeye, Amelia Haselkorn, Jacob H. Polin, Kenneth S. Byrd, and Lieff Cabraser, Heimann & Bernstein LLP, counsel for Plaintiffs;

20.     Larry D. Moffett and Law Office of Larry D. Moffett, counsel for Plaintiffs;

21.     Stuart Talley, Jack Davis, and Kershaw Talley Barlow, PC, counsel for Plaintiffs;

22.     Honorable Judge Kristi H. Johnson, United States District Court Judge; and

23.     Honorable Judge Michael T. Parker, United States Magistrate Court Judge.

<div style="text-align: right;">

/s/ Clarence Webster, III
Clarence Webster, III (MSB No. 102111)
3100 North State Street, Ste. 300 (39216)
P.O. Box 427
Jackson, MS 39205-0427
Tel: (601) 949-4900
cwebster@joneswalker.com

</div>

iii

## STATEMENT REGARDING ORAL ARGUMENT

The City Defendants respectfully submit oral argument will not aid the Court's understanding of the facts or law underlying this appeal.

The facts are set forth in a 103-page Second Amended Complaint—which includes 436 averments—that is annotated by approximately 115 footnotes. Plaintiffs also attach seven exhibits.

Fifth Circuit jurisprudence regarding bodily-integrity claims is clear. And whether the facts of this case warrant adoption of the state-created danger theory of liability will not require a complex analysis.

That said, the City Defendants do not oppose oral argument, acknowledging this appeal could impact future rulings in this Circuit and beyond.

#102836964v12

# TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PARTIES ........................................................i

STATEMENT REGARDING ORAL ARGUMENT ...............................................iv

TABLE OF AUTHORITIES ................................................................. viii

JURISDICTIONAL STATEMENT ..........................................................1

STATEMENT OF ISSUES PRESENTED FOR REVIEW ...................................2

STATEMENT OF THE CASE...................................................................4

I.     NATURE OF THE CASE...................................................................4

II.    COURSE OF PROCEEDINGS.........................................................4

III.   FACTS RELEVANT TO THE ISSUES PRESENTED FOR REVIEW........5

SUMMARY OF THE ARGUMENT .....................................................13

ARGUMENT ........................................................................................15

I.     STANDARD OF REVIEW.............................................................15

II.    PLAINTIFFS   FAILED   TO   PLEAD   A   CLAIM   FOR   BODILY
       INTEGRITY. ................................................................................17

       A.     The United States Constitution does not guarantee access to
              clean water.......................................................................17

       B.     The quality or quantity of the water supplied is not a matter of
              constitutional concern. ......................................................18

       C.     Bodily-integrity jurisprudence does not encompass exposure to
              contaminants.....................................................................19

       D.     The alleged acts and omissions of the City Defendants do not
              give rise to a bodily integrity claim....................................25

              1.     Alleged inaction of the City Defendants does not give rise
                     to a claim for bodily integrity. ................................28

2. Alleged actions of the City Defendants do not give rise to a claim for bodily integrity claim. ...........................................31

    i. The decision to switch water sources was not made by a City Defendant. ......................................................32

    ii. The decision to follow Trilogy's recommendation was not arbitrary. ...........................................................34

    iii. The City Defendants did not issue boil-water notices to address lead in the water system. ...................35

3. Alleged public pronouncements made in response to an environmental crisis do not give rise to a claim for bodily integrity. ...................................................................36

    i. The Complaint does not allege any City Defendant intended to harm Plaintiffs. ...........................................36

    ii. The City Defendants' public pronouncements were not made with deliberate indifference. ...........................40

    iii. There are no concrete examples arising from the established bodily integrity jurisprudence or from our Nation's history or traditions that support the right asserted here—protection from public statements. ...................................................................40

III. ADOPTION OF THE STATE-CREATED DANGER THEORY OF LIABILITY IS NOT APPROPRIATE HERE. ............................................42

  A. Plaintiffs have not pled a state-created danger claim under the standard articulated by this Court. ...........................................43

    1. Plaintiffs do not allege they suffered an injury caused by a third-party, non-state actor. ......................................................43

    2. Plaintiffs fail to plead the City Defendants were aware of an immediate danger to them specifically. ...............................45

  B. Appellants have not pled essential elements of a state-created danger claim under Tenth Circuit jurisprudence. ................................46

#102836964v12

1.    Plaintiffs do not allege they suffered an injury caused by a third-party, non-state actor. ....................................................... 46

2.    Plaintiffs fail to plead the City Defendants were aware of an immediate danger to them specifically. ............................... 48

IV.    THE INDIVIDUALLY NAMED CITY DEFENDANTS ARE ENTITLED TO QUALIFIED IMMUNITY, BECAUSE THE LAW WAS NOT CLEARLY ESTABLISHED WHEN THE ACTIONS GIVING RISE TO THE COMPLAINT OCCURRED. ............................... 49

V.    SMASH IS ENTITLED TO A DISMISSAL BECAUSE HE DID NOTHING WRONG. ................................................................... 54

VI.    THE COURT SHOULD DECLINE TO EXERCISE SUPPLEMENTAL JURISDICTION OVER PLAINTIFFS' STATE LAW CLAIMS UNDER SECTION 1367. .................................................. 55

CONCLUSION ....................................................................................... 56

CERTIFICATE OF COMPLIANCE ...................................................... 59

CERTIFICATE OF ELECTRONIC COMPLIANCE ............................. 60

#102836964v12

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Alton v. Tex. A&M Univ.*,
   168 F3d 196 (5th Cir. 1999) .................................................................27

*Ashcroft v. al-Kidd*,
   563 U.S. 731 (2011).................................................................43, 51

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009).................................................................15, 17

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007).................................................................15, 17

*Benzman v. Whitman*,
   523 F.3d 119 (2d Cir. 2008) ..............................................38, 39, 52

*Bickford v. Boerne Indep. Sch. Dist.*,
   2016 U.S. Dist. LEXIS 69101 (W.D. Tex. May 26, 2016) .........21, 22

*Brosseau v. Haugen*,
   543 U.S. 194 (2004).................................................................52

*Brown v. Detroit Pub. Sch. Comm. Dist.*,
   763 F. App'x 497 (6th Cir. 2019) ...................................................17

*Burge v. Parish of St. Tammany*,
   187 F.3d 452 (5th Cir. 1999) ........................................................55

*Cancino v. Cameron Cnty.*,
   794 F. App'x 414 (5th Cir. 2019) ...................................................46

*Cinel v. Connick*,
   15 F.3d 1338 (5th Cir. 1994) ........................................................16

*Club Retro, L.L.C. v. Hilton*,
   568 F.3d 181 (5th Cir. 2009) ........................................................50

*Collins* v. *Harker Heights*,
   503 U. S. 115 (1992)...............................................................*passim*

*Concerned Citizens of Neb. v. U. S. NRC,*
    970 F.2d 421 (8th Cir. 1992) ............................................................... 18

*Cope v. Cogdill,*
    3 F.4th 198 (5th Cir. 2021) ................................................... 51, 53, 54

*Cruzan v. Dir., Mo. Dep't of Health,*
    497 U.S. 261 (1990) ............................................................................ 53

*Dandridge v. Williams,*
    397 U.S. 471 (1970) ...................................................................... 24, 25

*Daniels v. Williams,*
    474 U.S. 327 (1986) ............................................................................ 27

*Daves v. Dall. Cty.,*
    984 F.3d 381 (5th Cir. 2020) ............................................................. 54

*DeShaney v. Winnebago County Dep't of Soc. Servs.,*
    489 U.S. 189 (1988) ............................................................................ 29

*District of Columbia v. Wesby,*
    138 S. Ct. 577 (2018) ......................................................................... 50

*Dixon v. Alcorn Cnty. Sch. Dist.,*
    499 F. App'x 364 (5th Cir. 2012) ............................................ 44, 45, 46

*Dobbs v. Jackson Women's Health Organization,*
    142 S. Ct. 2228 (2022) ....................................................................... 19

*Doe v. Covington Cty. Sch. Dist.,*
    675 F.3d 849 (5th Cir. 2012) ..................................................... *passim*

*Doe v. Edgewood Indep. Sch. Dist.,*
    964 F.3d 351 (5th Cir. 2020) ............................................................. 21

*Doe ex rel. Magee,*
    675 F.3d 849 (5th Cir. 2012) ............................................................. 26

*Doe v. Rains Cnty. Indep. Sch. Dist.,*
    66 F.3d 1402 (5th Cir. 1995) ............................................................. 21

ix

*Doe v. Taylor Indep. Sch. Dist.*,
   15 F.3d 443 (5th Cir. 1994) ...............................................................21

*Edelman v. Jordan*,
   415 U.S. 651 (1974)...........................................................................25

*Estate of Aguirre v. San Antonio*,
   995 F.3d 395 (5th Cir. 2021) ........................................................35, 36

*Estate of B.I.C. v. Gillen*,
   710 F.3d 1168 (10th Cir. 2013) ..........................................................47

*Estate of B.I.C. v. Gillen*,
   761 F.3d 1099 (10th Cir. 2014) ............................................................8

*Fisher v. Moore*,
   73 F. 4th 367 ......................................................................................43

*Gagne v. Galveston*,
   805 F.2d 558 (5th Cir. 1986) ..............................................................52

*Gasper v. La. Stadium & Exposition Dist.*,
   577 F.2d 897 (5th Cir. 1978) ........................................................20, 51

*Gasper v. Louisiana Stadium & Exposition District*,
   418 F. Supp. 716 (E.D. La. 1976).................................................20, 51

*Goldberg v. Kelly*,
   397 U.S. 254 (1970)...........................................................................24

*Gray v. Univ. of Colo. Hosp. Auth.*,
   672 F.3d 909 (10th Cir. 2012) ..............................................................9

*Guertin v. Michigan*,
   912 F.3d 907 (6th Cir. 2019) .................................33, 34, 52, 53, 54

*Hagedorn v. Union Carbide Corp.*,
   363 F. Supp. 1061 (N.D.W. Va. 1973)................................................18

*Henderson v. Harris Cnty.*,
   51 F.4th 125 (5th Cir. 2022) ...............................................................54

x

*Hernandez v. Tex. Dep't of Protective & Regul. Servs.*,
   380 F.3d 872 (5th Cir. 2004) ...............................................................26

*In re Detroit*,
   841 F.3d 684 (6th Cir. 2016) ...............................................................17

*J.W. v. City of Jackson*,
   663 F. Supp. 3d 624 (S.D. Miss. 2023) .......................................*passim*

*James v. Tex. Collin Cnty.*,
   535 F.3d 365 (5th Cir. 2008) ...............................................................17

*Jefferson v. Ysleta Independent School District*,
   817 F.2d 303 (5th Cir. 1987) ...............................................................21

*Joseph ex rel. Estate of Joseph v. Bartlett*,
   981 F.3d 319 (5th Cir. 2020) ...............................................................53

*Kinzie v. Dallas Cty. Hosp. Dist.*,
   106 F. App'x 192 (5th Cir. 2003) ........................................................45

*Kokesh v. Curlee*,
   No. 20-30356, 2021 U.S. App. LEXIS 28607 (5th Cir. Sept. 21,
   2021) ....................................................................................................52

*Lake v. City of Southgate*,
   No. 16-10251, 2017 WL 767879 (E.D. Mich. Feb. 28, 2017) ...........18

*Laviage v. Fite*,
   47 F.4th 402 (5th Cir. 2022) ...............................................................54

*Linicomn v. Hill*,
   902 F.3d 529 (5th Cir. 2018) ...............................................................50

*Lombardi v. Whitman*,
   485 F.3d 73 (2d Cir. 2007) .............................................................38, 39

*Lovelace v. Software Spectrum Inc.*,
   78 F.3d 1015 (5th Cir. 1996) ...............................................................16

*Lynch v. Cannatella*,
   810 F.2d 1363 (5th Cir. 1987) .............................................................55

*M.D. by Stukenberg v. Abbott*,
  907 F.3d 237 (5th Cir. 2018) ..............................................................26, 27, 42

*MacNamara v. Cty. Council of Sussex Cty.*,
  738 F. Supp. 134 (D. Del. 1990).........................................................18

*Manyweather v. Woodlawn Manor, Inc.*,
  40 F.4th 237 (5th Cir. 2022) ..............................................................56

*Marble v. Snyder*,
  453 F. Supp. 3d 970 (E.D. Mich. 2020) ............................................47

*Mason v. Lockwood, Andrews & Newnam, P.C.*,
  842 F.3d 383 (6th Cir. 2016) .......................................................33, 34

*Matthews v. Bergdorf*,
  889 F.3d 1136 (10th Cir. 2018) .........................................................48

*Mattoon v. City of Pittsfield*,
  980 F.2d 1 (1st Cir. 1992)............................................................17, 52

*McClendon v. City of Columbia*,
  305 F.3d 314 (5th Cir. 2002) .......................................................44, 1

*Moore v. Guthrie*,
  438 F.3d 1036 (10th Cir. 2006) .........................................................48

*Morgan v. Swanson*,
  659 F.3d 359 (5th Cir. 2011) .............................................................15

*Morris v. Dearborne*,
  181 F.3d 657 (5th Cir. 1999) .......................................................26, 41

*Pierce v. Hearne Independent School District*,
  ATV. 600 F. App'x (5th Cir. 2015) ...............................................22, 27

*Prucker v. Town of Wales*,
  No. 3:20-cv-11917-KAR, 2023 U.S. Dist. LEXIS 41483 (D. Mass.
  2023) ..................................................................................................38

#102836964v12

*Quadvest, L.P. v. San Jacinto River Auth.,*
   7 F.4th 337 (5th Cir. 2021) ...................................................................16

*R2 Invs. LDC v. Phillips,*
   401 F.3d 638 (5th Cir. 2005) ...............................................................15

*Rios v. City of Del Rio,*
   444 F.3d 417 (5th Cir. 2006) ...............................................................46

*Rochin v. Cal.,*
   342 U.S. 164 (1952)........................................................................23, 3

*Ruiz v. McDonnell,*
   299 F.3d 1173 (10th Cir. 2002) ...........................................................49

*Sacramento v. Lewis,*
   523 U.S. 833 (1998)................................................................*passim*

*Salazar v. City of Chicago,*
   940 F.2d 233 (7th Cir. 1991) ...............................................................27

*Spikes v. McVea,*
   12 F.4th 833 (5th Cir. 2021) ...............................................................17

*Srinivas v. Picard,*
   648 F. Supp. 2d 277, 288 (D. Conn. 2009)..........................................38

*Shapiro v. Thompson,*
   394 U.S. 618 (1969)..............................................................................38

*T.D. v. Patton,*
   868 F.3d 1209 (10th Cir. 2017) ...........................................................48

*Tanner v. Armco Steel Corp.,*
   340 F. Supp. 532 (S.D. Tex. 1972)..................................................20, 21

*Taylor v. Bailey Tool & Mfg. Co.,*
   744 F.3d 944 (5th Cir. 2014) ..........................................................15, 53

*Tyson v. Cnty of Sabine,*
   42 F.4th 508 (5th Cir. 2022) ...........................................................22, 26

xiii

*U.S. ex rel. Wilkins v. N. Am. Constr. Corp.*,
  101 F. Supp. 2d 500 (S.D. Tex. 2000) .................................................16

*Uhlrig v. Harder*,
  64 F.3d 567 (10th Cir. 1995) ...............................................................48

*Union Pacific Railway Co. v. Botsford*,
  41 U.S. 250 (1891) ................................................................................3

*United States v. Guidry*,
  456 F.3d 493 (5th Cir. 2006) ...............................................................22

*Waide* v. *Early*,
  960 F.3d 303 (6th Cir. 2020) .......................................................53, 54

*Wash. v. Harper*,
  494 U.S. 210 (1990) .......................................................................23, 53

*Washington v. Glucksberg*,
  521 U.S. 702 (1997) .............................................................................41

*Williams v. Barbour*,
  Civ. Action No. 3:09CV179-DPJ-JCS, 2009 U.S. Dist. LEXIS
  98114 (S.D. Miss. Oct. 2, 2009) ...................................................*passim*

*Winston v. Lee*,
  470 U.S. 753 (1985) .............................................................................53

*Young v. Isola, Miss.*,
  No. 3:15cv108, 2016 WL 6916790 (N.D. Miss. Nov. 23, 2016) .......................20

**State Cases**

*Las Lomas Land Co., LLC v. City of L.A.*,
  177 Cal. App. 4th 837, 99 Cal. Rptr. 3d 503 (2009) .........................38

**Constitutional Provisions**

U.S. CONST. Amendment XIV .........................................................*passim*

**Federal Statutes**

28 U.S.C. § 1291 (1982) .........................................................................1

#102836964v12

28 U.S.C. § 1331 (1980) ............................................................................1

28 U.S.C. § 1367 (1990) .....................................................................1, 56

42 U.S.C. § 300f et. seq. (Safe Drinking Water Act) .....................................*passim*

42 U.S.C. § 1983 (1996) ..................................................................1, 17

**Rules**

Federal Rule of Appellate Procedure 4(a)(1)(A) .........................................................1

Federal Rule of Civil Procedure 12(b)(6) ..............................................................15

**Other Authorities**

5A CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL
   PRACTICE AND PROCEDURE § 1363 ...............................................................16

#102836964v12

## JURISDICTIONAL STATEMENT

The District Court had subject matter jurisdiction over Plaintiffs' 42 U.S.C. § 1983 (1996) claims under 28 U.S.C. § 1331 (1980) and their state law claim under 28 U.S.C. § 1367 (1990).  ROA.1450-1451.  This Court has appellate jurisdiction under 28 U.S.C. § 1291 (1982) over the dispositive orders appealed, which merged into the final judgment issued on June 20, 2024.  ROA.1947. Plaintiffs filed their notice of appeal on July 19, 2024, within thirty days as required by Federal Rule of Appellate Procedure 4(a)(1)(A).  ROA.1948-1950.

## STATEMENT OF ISSUES PRESENTED FOR REVIEW

**<u>Issue 1</u>:**      The Due Process Clause is not a vehicle for parties to second-guess government officials' actions; instead, it acts as a safeguard against arbitrary government action.  Plaintiffs ask this Court to hold the City Defendants liable for making decisions that addressed problems with the City's aging water system.  Do Plaintiffs' complaints about those decisions give rise to a due process claim?

**<u>Issue 2</u>:**      The Fifth Circuit has repeatedly declined to recognize a state-created danger claim; but, the Court has articulated a standard for the claim.  The Second Amended Complaint does not meet that standard or the Tenth Circuit's.  Should the Court adopt the state-created danger theory of liability when it would not impact this appeal?

**<u>Issue 3</u>:**      The City Defendants are entitled to qualified immunity if Plaintiffs have not pleaded allegations demonstrating the violation of a Constitutional right that was clearly established at the time of the alleged conduct.  Prior to the alleged conduct at issue, courts uniformly rejected constitutional claims alleging environmental harms.  May Plaintiffs rely on one case decided after the conduct at issue here to show the City Defendants violated a clearly established constitutional right?

**<u>Issue 4</u>:**      The Fifth Circuit has advised courts not to exercise jurisdiction over state-law claims when the federal-law claims are dismissed at the pleading

stage. If the Court affirms dismissal of Plaintiffs' constitutional claims, should it also affirm dismissal of Plaintiffs' state-law claims without prejudice?

## STATEMENT OF THE CASE

### I.     Nature of the Case

Plaintiffs' claims arise from the City Defendants' oversight of the City's public water system, an aging system with multiple, sometimes-conflicting problems and priorities.  Plaintiffs believe the City Defendants' response to some of those issues violated their due process rights.  Plaintiffs seek to hold the City Defendants liable for violations of the Constitution and state law.  ROA.1528-1533.

### II.     Course of Proceedings

Plaintiffs filed their Amended Complaint on June 15, 2023.  ROA.788-955. The City Defendants answered the Amended Complaint, ROA.1010-1042, and filed dispositive motions.  ROA.1043-1288.  The District Court granted the City's motion, dismissing Plaintiffs' bodily integrity claim without prejudice—allowing Plaintiffs to replead it—and their state-created danger claim with prejudice.  *See* ROA.1433-1435.  The District Court dismissed the claims against the individually named City Defendants with prejudice, finding they were entitled to qualified immunity. ROA.1435-1438.

Plaintiffs filed the Second Amended Complaint (hereinafter referred to as the Complaint) on February 20, 2024, ostensibly to reassert the bodily integrity claim. ROA.1445-1547.  The City Defendants moved to dismiss the Complaint, which the District Court granted.  ROA.1920-1944.  The City Defendants also asked the

District Court not to exercise supplemental jurisdiction over the state-law claims, and the Court agreed.  ROA. 1945-1946.

## III.    Facts Relevant to the Issues Presented for Review

The City's aging public water system faces multifaceted issues, the cause of which is "decades of underinvestment in a sprawling water system made up of roughly 1,500 miles of water mains, some of which are over 100 years old."  *See* ROA.1461-1462.[1]

The Complaint focuses on conduct that began in late 2013 or early 2014 when Interim Public Works Director Willie Bell met with Cynthia Hill, who "ran Jackson's water treatment plants", to discuss the water system's corrosion control.  ROA.1469-1470.  One issue Bell and Hill discussed was a lime-injection pump at the O.B. Curtis Water Treatment Plant.[2]  ROA.1470.  Bell asked Hill to estimate the "cost of repairs, including the cost to switch to liquid lime treatment to improve

---

[1]    Jason Breslow, *The Water Crisis in Jackson Follows Years of Failure to Fix an Aging System*, NPR (Aug. 31, 2022), cited in ROA.1462 (Compl. [Doc. 101], at 18 n.8).

[2]    The City provides water to approximately 173,514 residents through two public drinking-water systems, identified separately as PWS ID No. MS0250012 and PWS ID No. MS0250008.  *See* ROA.1460; ROA.1549-1565.  PWS MS0250012 serves a small portion of the City's residents and portions of Byram (approximately 16,000 connections total).  *See* ROA.1549-1565; *see generally* ROA. 1476-1477.  This system uses groundwater drawn from wells.  *See* ROA.1549-1565.

PWS MS0250008 provides water to the vast majority of the City's water users.  *See* ROA.1549-1565.  That system uses surface water drawn from the Reservoir and the Pearl River.  *See* ROA.1549-1565.  It has two water-treatment plants, O.B. Curtis Water Treatment Plant and J.H. Fewell Water Treatment Plant.  *See* ROA.1549-1565.

corrosion control." ROA.1470. The estimated cost was $400,000.00. ROA.1470.

Bell then met with then-Mayor Chokwe Lumumba (the father of Defendant-Mayor

Chokwe A. Lumumba). ROA.1469-1470. According to Bell, after that meeting,

they ask Hill, "Can this [repairing the lime-injection pump] wait until the next

budget year?" ROA.1475.[3]

Then-Mayor Lumumba passed away in February 2014. ROA.1471.

Defendant Tony Yarber was elected to complete his term in April 2014.

ROA.1471. Yarber did not retain Bell. ROA.1473. Yarber chose Defendant

Kishia Powell to serve as public works director. ROA.1473.

A month before Yarber's election, in March 2014, the City approved notices

of completion of phases of the well water (PWS MS0250012) replacement project,

called the Maddox Road Booster Station project. ROA.1200-1201. In October

2014—following completion of the project—the City transferred approximately

16,000 water connections from PWS MS0250012 (well water) to PWS

MS0250008 (surface water). ROA.1603. The City switched those 16,000

---

[3]      Anna Wolfe, *Ex-official: Jackson Has Water Solution, Hasn't Acted*, CLARION-LEDGER (Mar. 23, 2016), https://www.clarionledger.com/story/news/local/2016/03/22/offering-jackson-water-solutions-new-treatment-needed/82120680/, cited at ROA.1475 (Compl. [Doc. 101], at 27 n.32).

connections back to the well-water system due to issues with the booster station. ROA.1597.

On June 23-25, 2015, the Mississippi State Department of Health (MSDH) performed Safe Drinking Water Act (SDWA) testing in the City. ROA.1479-1480. Before receiving the test results, the City identified renovation and repair needs for both O.B. Curtis, totaling $3.5 million, and J.H. Fewell, totaling $4.9 million, which would have included—among other projects—improving corrosion control. ROA.1493.[4] At that time, Powell "knew that because of clogging of the lines, that the system was not the most efficient system, but…did not have any data . . . the water leaving the plant [was] creating a problem out in the system." ROA.1493.[5]

The City received notice for the first time on January 28, 2016, thirteen samples MSDH tested had detected lead above the federal action level. ROA.1480. On the next day, January 29, 2016,[6] the City held a press conference at

---

[4]    Tim Summers, Jr., *Update: Council Approves Trilogy for Water Corrosion Study; Emergency Loan to Fund It*, JACKSON FREE PRESS (Apr. 5, 2016), https://m.jacksonfreepress.com/news/2016/apr/05/council-rethinking-trilogy-water-corrosion-study-e/, cited at ROA.1493 (Compl. [Doc. 101], at 45 n.66).

[5]    *Id.*

[6]    Plaintiffs aver "upon information and belief, the [City] Defendants and their employees were made aware of these test results." ROA.1480. Plaintiffs provide no basis for that belief. And the Court is not required to strain to make inferences favorable to Plaintiffs or accept their conclusory allegations or unwarranted deductions as true.

which Powell announced the results.  ROA.1481; ROA.1482.[7]  She disclosed the

results meant the "City is required to take additional compliance measures."

ROA.1482 (cleaned up).[8]  She offered assurances "[t]his is not a situation where

you have to stop drinking the water."  ROA.1481.  She continued, "We want

people to understand how they should be flushing their internal plumbing system

before using water . . . These are just measures you take."  ROA.1482.[9]

　　　The City also issued recommendations and precautions for water usage.

ROA.1475.[10]  The recommendations and measures included running tap water on

cold for one to two minutes before consumption; never using hot water for

consumption; children under 5-years old and pregnant women not consuming tap

water; using filtered or bottled water when mixing formula; and screening children

under six-years old for lead.[11]

---

[7]　　Anna Wolfe & Sara Fowler, *Jackson, MSDH Report Lead Detection in City Water*, CLARION-LEDGER (Jan. 29, 2016), https://www.clarionledger.com/story/news/local/2016/01/29/small-amount-lead-some-jackson-residents-water/79510298, cited at ROA.1482 (Compl. [Doc. 101] at 34 n.42).

[8]　　*Id.*

[9]　　*Id.*

[10]　　Tim Summers, Jr., *As the Water Turns, City Wrestles Over Corrosion Study*, JACKSON FREE PRESS (Mar. 16, 2016), https://m.jacksonfreepress.com/news/2016/mar/16/water-turns-city-wrestles-over-corrosion-study/, cited at ROA.1475 (Compl. [Doc. 101] at 27 n.34).

[11]　　Anna Wolfe, *6 Things to Know About the Lead Water in Jackson*, CLARION-LEDGER (Mar. 25, 2016), https://www.clarionledger.com/story/news/local/2016/03/17/5-things-know-lead-water-jackson/81830278/, cited at ROA.1490 (Compl. [Doc. 101] at 42 n.55).

City officials made further public statements over the next few weeks.
Yarber said, "I don't want to sound the wrong alarm and have folks saying, 'We're Flint.' We're not Flint." ROA.1483.  Powell added, "[A] major difference between Flint, Michigan, and Jackson, Mississippi . . . is that the crisis in Flint began because the city did not have corrosion control measures in place, whereas Jackson does." ROA.1482.  She acknowledged those corrosion-control "systems need to be improved and upgraded . . . ." ROA.1482.[12]  She also correctly pointed out "there is no lead in the drinking water as it leaves the water treatment plant." ROA.1483.

On February 12, 2016, MSDH provided a Compliance Plan to the City. ROA.1492, 1571-1578.  The Compliance Plan directed the City to:

- [I]dentify an individual or firm providing professional engineering service to the City of Jackson for drinking water matters and provide the name or firm by written notice to the Director of the MSDH Bureau of Public Water Supply…

---

Since that press conference, the City has consistently provided the same precautions to residents. Anna Wolfe, *Jackson Hit with Technical Violation for Water Treatment*, CLARION-LEDGER (June 10, 2016), https://www.clarionledger.com/story/news/local/2016/06/09/jackson-issued-technical-violation-water-treatment/85618558/, cited at ROA.1468 (Compl. [Doc. 101] at 20 n.24).

[12]    Anna Wolfe, *Jackson City Counsel Talks Lead Water*, CLARION-LEDGER (Feb. 19, 2016), https://www.clarionledger.com/story/news/local/2016/02/17/jackson-city-council-talks-lead-water/80538910/, cited at ROA.1482 (Compl. [Doc. 101] at 34 n.43).

- [P]rovide the required Public Education pamphlet to all City of Jackson Water System customers…

- [P]rovide the required Public Education pamphlet to all Child Care Centers, Head Start Centers, Schools, Healthcare Facilities and any other locations where the City of Jackson is aware of children in congregate settings…

- [S]ubmit an engineer-designed corrosion control study and plan for optimization of water treatment for the City of Jackson Water System to the Director of the MSDH Bureau of Public Water Supply…

ROA.1571-1578. The City complied with its obligations to provide public education materials. ROA.1576.

To meet the Compliance Plan, the City selected Trilogy Engineering to design a corrosion control study and plan for optimizing the City's water treatment. *See* ROA.1493. Trilogy's president was Phillip West Gibson, a licensed professional engineer "who [had] a history working on the city's water systems." ROA. 1475.[13] *See also* ROA.1228. The City did so because "lime treatment [would] likely not be all that [needed to be change[d]]." ROA.1475.[14] The rationale for proceeding with the Compliance Plan's mandated corrosion control study before purchasing new equipment was explained as follows:

---

[13]    Summers, *supra* note 10.

[14]    Wolfe, *supra* note 3.

> Whatever has been put in the budget in the past has had to be spent on emergencies…The reality though is now we're seeing that the liquid lime feed system, had it been installed, may not have been the optimal measure after all, and if we had just put in a piece of equipment because someone said that that would work without there actually being a proper corrosion control treatment optimization study, then we could have very well lost $400,000.

ROA.1475.[15]  Trilogy considered a number of options for corrosion control, ultimately recommending soda ash.  ROA.1462.[16] *See also* ROA.1495.

The City's remedial actions improved the system's corrosion control. ROA.1490,[17] ROA.1494.[18]  With regard to the overall process of optimizing corrosion control, the EPA stated:

> [F]ederal law gives a utility years to optimize corrosion control to come into compliance, so lead exceedances persisting a year after discovery is certainly not unusual. For a city the size of Jackson, the Lead and Copper Rule gives up to 18 months to complete corrosion control

---

[15]     *Id.*

[16]     Anna Wolfe, *Jackson Water System Contains Lead Joints*, Clarion-Ledger (May 10, 2016), https://www.clarionledger.com/story/news/local/2016/03/15/city-water-system-has-some-lead-joints/81780766/, cited at ROA.1462 (Compl. [Doc. 101] at 14 n.9).

[17]     Anna Wolfe, *A Year Later, Jackson's Lead-Water Issue Not Solved*, HATTIESBURG AMERICAN (Dec. 13, 2016), https://www.hattiesburgamerican.com/story/news/local/2016/12/13/year-later-jackson-lead-water-issue-solved/95401880/, cited at ROA.1490 (Compl. [101] at 42 n.57) ("The latest pH field sampling in November shows an average pH of 9.4 across the city's water system, indicating marked improvement.")

[18]     Anna Wolfe, *Jackson Water Issues Persist, Lead Levels Down*, CLARION-LEDGER (July 2, 2017), https://www.clarionledger.com/story/news/local/2017/07/03/jackson-water-issues-persist-lead-levels-down/437239001/, cited at ROA.1494 (Compl. [Doc. 101] at 46 n.69).

> studies, six months to determine the best treatment
> method and up to 24 months to install the treatment.

ROA. 1490.[19]  Importantly, the City's public water system has not exceeded the

federal lead action level since December 2016.  ROA.1583.

Mayor-Defendant Chokwe A. Lumumba assumed office on July 3, 2017.

During his tenure, the City has worked to fill positions at O.B. Curtis and J.H.

Fewell.  *See e.g.*, ROA.1489.[20]  The City has also installed components for

optimizing the system's corrosion control.  *See* ROA.1489.

Defendant Robert Miller was the City's public works director from "at least

October 2017 to July 2020." ROA.1458.  The allegations in the Complaint relevant

to Miller are that he (1) made the "true" statement "'there's been no detecting of

lead or copper in the water supply'"; and (2) assured water users "[t]he water is

still safe to drink."  ROA.148.  Miller and Mayor Lumumba consistently

emphasized water users should "continue to use precautions", including:

> [U]sing filtered or bottled water for pregnant women,
> children 5 years old and younger, and for making
> formula. Residents should run the water for one to two
> minutes in the morning before using it for the first time;
> clean faucet aerators; and make sure children have
> adequate lead testing done. Jacksonians should also not
> drink hot water from the tap.

---

[19]    *Id.*

[20]    Steve Wilson, *EPA Emails Reveal City's Continued Violations*, NORTHSIDE SUN (Sept. 8, 2021), https://www.northsidesun.com/local-news-top-stories/epa-emails-reveal-citys-continued-violations, cited at ROA.1489 (Compl. [Doc. 101] at 41 n.54).

ROA.1486.[21]

As of June 2021, "[r]egulators and public-work officials agree[d] that Jackson's water-treatment facilities have completed key improvements…." ROA.1514.[22]

## SUMMARY OF THE ARGUMENT

The Complaint is devoid of allegations the City Defendants intended to harm Plaintiffs in responding to the numerous problems with the City's aging water system. Instead, Plaintiffs assert the City Defendants' deliberate indifference to Plaintiffs' health and safety was arbitrary government action that shocks the conscience, giving rise to substantive due process claims for bodily integrity and state-created danger. The District Court correctly found the allegations in the Complaint do not state constitutional violations.

In essence, Plaintiffs find fault with a number of decisions the City Defendants made to address problems with the water system. Whether the City Defendants should have made different decisions is not a matter of substantive due

---

[21]    Marie Weidmayer, *City Violated Water Treatment Procedure, Still Safe to Drink*, JACKSON FREE PRESS (July 19, 2018), https://m.jacksonfreepress.com/news/2018/jul/19/city-violated-water-treatment-procedure-still-safe/, cited at ROA.1486 (Compl. [Doc. 101] at 38 n. 50).

[22]    Nick Judin, *EPA Tours Jackson Water Treatment Plants as City Faces Long Road to Rehab*, MISSISSIPPI FREE PRESS (July 26 , 2021), https://www.mississippifreepress.org/epa-tours-jackson-water-treatment-plants-as-city-faces-long-road-to-rehab/, cited at ROA.1514 (Compl. [Doc. 101] at 66 n.112).

process. A substantive due process claim does not arise every time a government's decision allegedly causes harm. Instead, substantive due process provides an avenue through which parties may seek redress for injuries caused by arbitrary government action. None of the decisions about which Plaintiffs complain were arbitrary.

Adoption of the state-created danger theory of liability is not appropriate. Plaintiffs fail to plead a third-party, non-state actor injured them—an essential element under the standard acknowledged by the Fifth Circuit. Because they cannot meet that standard, Plaintiffs ask the Court to adopt the Tenth Circuit's standard instead. Plaintiffs ignore the Tenth Circuit's "precondition" to stating a state-created danger claim—allegations of private violence at the hands of a non-state actor. Plaintiffs admit they cannot satisfy the precondition.

The District Court correctly held the individually named City Defendants are entitled to qualified immunity. Qualified immunity is appropriate because Plaintiffs fail to plead a violation of a constitutional right. It is also proper where Plaintiffs fail to identify a constitutional right that was clearly established at the time of the City Defendants' alleged conduct. A constitutional right is clearly established where courts may "point to controlling authority—or a robust consensus of persuasive authority—that defines the contours of the right in question with a high degree of particularity." *Morgan v. Swanson*, 659 F.3d 359,

14

371-72 (5th Cir. 2011).  Plaintiffs offer no controlling authority from the relevant time period establishing with particularity the contours of the bodily-integrity right upon which they base their claim, i.e., a right to how government officials maintain a water system and respond to related issues and problems.  The individually named City Defendants are also entitled to qualified immunity on the state-created danger claim; that claim was not recognized in the Fifth Circuit prior to the events at issue in this appeal.

## ARGUMENT

### I.    Standard of review.

The Court reviews *de novo* the grant of a motion to dismiss for failure to state a claim.  *See Taylor v. Bailey Tool & Mfg. Co.*, 744 F.3d 944, 946 (5th Cir. 2014).

A Federal Rule of Civil Procedure 12(b)(6) motion tests the sufficiency of a party's complaint.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 562-63, 570 (2007).  The Court "accept[s] as true the allegations in the complaint and construe[s] them in the light most favorable to the plaintiff."  *R2 Invs. LDC v. Phillips*, 401 F.3d 638, 642 (5th Cir. 2005).  But, the Court "will not strain to find inferences favorable to the plaintiffs" or "accept 'conclusory allegations, unwarranted deductions, or legal conclusions.'"  *Id.*

The Court may refer to matters of public record and documents attached to, or referenced in, the complaint. *See Cinel v. Connick*, 15 F.3d 1338, 1343 n.6 (5th

Cir. 1994) (matters of public record); *Lovelace v. Software Spectrum Inc.*, 78 F.3d 1015, 1017 (5th Cir. 1996) (exhibits to the complaint); *U.S. ex rel. Wilkins v. N. Am. Constr. Corp.*, 101 F. Supp. 2d 500, 513 (S.D. Tex. 2000) (exhibits incorporated in the pleadings) (quoting 5A CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1363). If an exhibit contradicts a factual averment, "then indeed the exhibit and not the allegation controls." *Quadvest, L.P. v. San Jacinto River Auth.*, 7 F.4th 337, 345 (5th Cir. 2021) (internal quotations omitted). The Complaint incorporates dozens of exhibits and secondary sources the Court should consider in evaluating whether Plaintiffs have stated constitutional claims.

In *Williams v. Barbour*, the district court sets forth the pleading requirement for alleging a constitutional claim against a government official in his or her individual capacity:

> The generic pleading requirements of [Rule] 8 govern suits against individual defendants in their official capacity. . . . Plaintiffs suing government officials *in their individual capacities, however must allege specific conduct giving rise to a constitutional violation. This standard requires more than conclusory assertions: The plaintiff must allege specific facts giving rise to a constitutional violation.*

Civ. Action No. 3:09CV179-DPJ-JCS, 2009 U.S. Dist. LEXIS 98114, at *7 (S.D. Miss. Oct. 2, 2009) (emphasis added); *see also Spikes v. McVea*, 12 F.4th 833, 833 (5th Cir. 2021) (noting the qualified-immunity inquiry must focus on the role of

16

each defendant, not the collective action of a group of defendants).  That pleading

standard is consistent with *Iqbal* and *Twombly*.  *Williams*, 2009 U.S. Dist. LEXIS

98114, at *7-8.

## II.     Plaintiffs failed to plead a claim for bodily integrity.

To state a § 1983 claim, "a plaintiff must (1) allege a violation of a right

secured by the Constitution or laws of the United States and (2) demonstrate that

the alleged deprivation was committed by a person acting under color of state

law." *James v. Tex. Collin Cnty.*, 535 F.3d 365, 373 (5th Cir. 2008).

Plaintiffs cannot meet the first element of a § 1983 claim.

### A.     The United States Constitution does not guarantee access to clean water.

No court has recognized a fundamental right to water services.  *In re Detroit*,

841 F.3d 684, 700 (6th Cir. 2016) ("[T]here is no fundamental right to water

service.").  Nor has a court recognized a constitutional right to clean water; in fact,

all have denied its existence.  *See, e.g.*, *Mattoon v. City of Pittsfield*, 980 F.2d 1, 5-

6 (1st Cir. 1992) (holding that the plaintiffs had no "'constitutional right' to safe

drinking water").  *See also Brown v. Detroit Pub. Sch. Comm. Dist.*, 763 F. App'x

497, 503 (6th Cir. 2019) (unpublished) (holding "neither the text nor history of the

Due Process Clause" supports a right to a contaminant-free environment); *Lake v.

City of Southgate*, No. 16-10251, 2017 WL 767879, at *10 (E.D. Mich. Feb. 28,

2017) (finding no fundamental constitutional right to "freedom from harmful

contaminants"); *Concerned Citizens of Neb. v. U. S. NRC*, 970 F.2d 421, 426-27 (8th Cir. 1992) (rejecting constitutional claims for exposure to radiation from a radioactive waste disposal facility); *MacNamara v. Cty. Council of Sussex Cty.*, 738 F. Supp. 134, 142 (D. Del. 1990) (finding no substantive due process right to health where plaintiff claimed the placement of an electrical substation would harm her health); *Hagedorn v. Union Carbide Corp.*, 363 F. Supp. 1061, 1063 (N.D.W. Va. 1973) (holding that plaintiffs failed to state a constitutional claim for damage from a "rain of pollutants [with] the [attendant] stench of gasses [sic] and fumes.").

The United States' executive branch agrees. In the United States' Explanation of Position on the United Nations Human Rights Council's recognition of the right to water as a human right, the United States government states, "The right to safe drinking water and sanitation is not one that is protected in our Constitution, nor is it justiciable as such in U.S. courts, though various U.S. laws protect citizens from contaminated water." The United States, *Observations by the United States of America on the Relationship Between Climate Change and Human Rights*, http://www.ohchr.org/Documents/Issues/ClimateChange Submissions/USA.pdf (emphasis added).

**B.     The quality or quantity of the water supplied is not a matter of constitutional concern.**

Plaintiffs' 103-page Complaint raises a number of alleged deficiencies regarding the quality and quantity of the water the City provided. None of those

alleged deficiencies provide a basis for a bodily integrity claim, because the

Constitution does not guarantee access to a public water supply.  (Plaintiffs'

averments may give rise to a tort claim or fall within the province of a state or

federal statutory or regulatory regime, but that issue is not before this Court.).

Plaintiffs, nevertheless, ask this Court to expand the scope of the Fourteenth

Amendment to guarantee "Plaintiffs' access to safe drinking water", *see, e.g.*,

ROA.1529 (claiming the City violated Plaintiffs' constitutional rights by "denying

and obstructing Plaintiffs' access to safe drinking water"), a right not set forth in

the first eight Amendments to the Constitution or rooted in the United States'

history and tradition.  The Supreme Court's decision in *Dobbs v. Jackson Women's*

*Health Organization*, 142 S. Ct. 2228 (2022), cautions against such expansion,

warning

> In interpreting what is meant by the Fourteenth
> Amendment's reference to 'liberty,' we must guard
> against the natural human tendency to confuse what that
> Amendment protects with our own ardent views about
> the liberty that Americans should enjoy. That is why the
> Court has long been 'reluctant' to recognize rights that
> are not mentioned in the Constitution.

*Id.* at 2247-48 (quoting *Collins* v. *Harker Heights*, 503 U. S. 115, 125 (1992)).

The Court should deny Plaintiffs' request.

**C.     Bodily-integrity jurisprudence does not encompass exposure to
contaminants.**

Fifth Circuit "case law in this area is sparse." *Young v. Isola, Miss.*, No. 3:15cv108, 2016 WL 6916790, at *5 (N.D. Miss. Nov. 23, 2016), *rev'd on other grounds*, 708 F. App'x 152 (5th Cir. 2017) (per curiam). In the few cases in which a plaintiff has claimed a bodily integrity violation due to exposure to environmental contaminants, courts have declined to expand the scope of substantive due process to encompass environmental control. In *Gasper v. Louisiana Stadium & Exposition District*, 418 F. Supp. 716 (E.D. La. 1976), a group of nonsmokers brought constitutional claims to ban smoking in the Louisiana Superdome. The plaintiffs alleged allowing smoking at the Louisiana Superdome caused "nonsmokers involuntarily to consume hazardous tobacco smoke, thereby causing physical harm and discomfort to those nonsmokers". *Id.* at 717. The district rejected that claim, finding there is "no constitutional right to a clean environment." *Id.* at 720-21. The Fifth Circuit agreed. *Gasper v. La. Stadium & Exposition Dist.*, 577 F.2d 897 (5th Cir. 1978).

The *Gasper* district court relied on *Tanner v. Armco Steel Corp.*, 340 F. Supp. 532 (S.D. Tex. 1972). In *Tanner*, the plaintiffs brought substantive due process claims for petroleum refineries' emissions of pollutants into the air, which the plaintiffs alleged caused pulmonary damage. *Id.* at 534. The district court found, assuming plaintiffs could plead sufficient state action, they still failed to state a constitutional claim. The court noted,

> [F]rom an institutional viewpoint, the judicial process, through constitutional litigation, is peculiarly ill-suited to solving problems of environmental control. Because such problems frequently call for the delicate balancing of competing social interests, as well as the application of specialized expertise, it would appear that their resolution is best consigned initially to the legislative and administrative processes.

*Id.* at 536. The Court should not move substantive due process into the environmental-control arena.

In the Fifth Circuit, the right to bodily integrity "appears to arise almost exclusively in the context of sexual abuse" cases. *Bickford v. Boerne Indep. Sch. Dist.*, 2016 U.S. Dist. LEXIS 69101, *11 n.4 (W.D. Tex. May 26, 2016). *See also Doe v. Taylor Indep. Sch. Dist.*, 15 F.3d 443, 50-51 (5th Cir. 1994); *Doe v. Rains Cnty. Indep. Sch. Dist.*, 66 F.3d 1402, 1407 (5th Cir. 1995); *Doe v. Edgewood Indep. Sch. Dist.*, 964 F.3d 351, 365 (5th Cir. 2020). In *every* case in which the Fifth Circuit has found a violation of bodily integrity, a state actor has coerced—either through force or otherwise—the plaintiff to act in a manner that violated his or her bodily integrity. For example, in the *Doe* cases cited above, a teacher sexually abused a student. In *Jefferson v. Ysleta Independent School District*, 817 F.2d 303, 305 (5th Cir. 1987), a teacher tied a second grader to a chair. And, in *United States v. Guidry*, 456 F.3d 493, 506 (5th Cir. 2006), a police officer sexually assaulted female arrestees.

21

Absent coercion (e.g., assault, rape, sexual assault, or harassment[23]), the Fifth Circuit has declined to find a bodily integrity violation. In *Pierce v. Hearne Independent School District*, the court found no violation of the right to bodily integrity when a student was killed while driving his teacher's ATV. 600 F. App'x 194 (5th Cir. 2015) (unpublished). The *Pierce* Court distinguished sexual abuse and corporeal punishment cases from a traditional claim of negligence, because the teacher did not "deliberately abuse, restrain, threaten or touch [the deceased]." *Id.* at 199. The Court also noted Supreme Court precedent warning courts against expanding substantive due process rights by turning a negligence claim into a constitutional matter. *Id.* (citing *Collins*, 503 U.S. at 125).

Likewise, in *Bickford*, the court declined to find a bodily-integrity violation arising from a stage-production accident, in which the plaintiff's spine was crushed, lungs were punctured, and legs were shattered. 2016 U.S. Dist. LEXIS 69101, *1, *11-*13.

The Supreme Court cases addressing bodily-integrity claims confirm the right to bodily integrity is violated when the state forces intrusion upon the plaintiff's body. *See, e.g.*, *Union Pacific Railway Co. v. Botsford*, 41 U.S. 250 (1891) (determining the state could not force an individual to submit to a surgical

---

[23] *See generally Tyson v. Cnty. of Sabine*, 42 F.4th 508, 519 (5th Cir. 2022).

examination); *Rochin v. Cal.*, 342 U.S. 164, 166, 172 (1952) (finding the state could not force an "an emetic solution through a tube into [a claimant's] stomach"); *Wash. v. Harper*, 494 U.S. 210 (1990) (finding that the state could forcibly inject antipsychotic drug into an unwilling claimant). Those holdings are inapplicable here. The City Defendants did not force Plaintiffs to consume the water. Rather, Plaintiffs allege the City Defendants' operation of a public water system was insufficient.

Coercion is what distinguishes a viable bodily-integrity claim from Plaintiffs'. The latter lacks merit because a robust consensus of cases holds there is no substantive due process right to a clean environment. In each of those cases, the plaintiff claimed that some pollutant entered, or threatened to enter, her body and the government was aware of and responsible for the risk. None found a violation of the plaintiff's bodily integrity. This Court should follow precedent and not expand substantive due process rights by turning a negligence claim into a constitutional one.

Admittedly, when faced with an identical bodily-integrity claim, Judge Carlton Reeves found the plaintiffs had sufficiently alleged a claim. *See J.W. v. City of Jackson*, 663 F. Supp. 3d 624, 640 (S.D. Miss. 2023). The City Defendants respectfully disagree with that ruling, respectfully submitting the Court's opinion reached an incorrect legal conclusion. Judge Reeves wrote:

> "The Supreme Court has long recognized that the government does not have to provide a service, but once it does, the provision of that service is subject to constitutional constraints. *See, e.g., Goldberg v. Kelly*, 397 U.S. 254 (1970); *see also Dandridge v. Williams*, 397 U.S. 471, 522 (1970) (Marshall, J., dissenting) ('[T]he Court has already recognized several times that when a benefit, even a 'gratuitous' benefit, is necessary to sustain life, stricter constitutional standards, both procedural and substantive, are applied to the deprivation of that benefit.')."

*See J.W.*, 663 F. Supp. 3d at 644 n.122. He then used those case cites to conclude that once a city provides water services, users of that service obtain a constitutional right to contamination-free water. *Id* at 644-645. Those cases do not stand for that proposition. To date, no Court has held that the provision of water, once provided, subjects a municipality or its officials to constitutional strict scrutiny as to how that water is provided.

*Goldberg* addressed the procedural due process rights of a welfare recipient. 397 U.S. at 255-56. And in *Dandridge*, an equal protection challenge to a welfare regulation, the majority offered guidance that is apropos here. The *Dandridge* majority held, "the Equal Protection Clause does not require that a State must choose between attacking every aspect of a problem or not attacking the problem at all." 397 U.S. at 487.[24] Going further, the *Dandridge* Court found "[t]he

---

[24]   The dissenting opinion in *Dandridge* relied on *Shapiro v. Thompson*, 394 U.S. 618 (1969), which was overturned by *Edelman v. Jordan*, 415 U.S. 651 (1974).

24

Constitution may impose certain procedural safeguards upon systems of welfare administration. But the Constitution does not empower this Court to second-guess state officials charged with the difficult responsibility of allocating limited public welfare funds among the myriad of potential recipients." *Id.* (internal quotations omitted). In the same vein, the City Defendants' decisions regarding the operation of a public water system should not open them to the strict scrutiny of the Court.

### D. The alleged acts and omissions of the City Defendants do not give rise to a bodily integrity claim.

"[T]he Due process guarantee does not entail a body of constitutional law imposing liability whenever someone cloaked with state authority causes harm." *Sacramento v. Lewis*, 523 U.S. 833, 848 (1998). "[I]n a due process challenge to executive action, the threshold question is whether the behavior of the governmental officer is so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience." *Id.* at 847. In *Lewis*, the Supreme Court emphasized that "only the most egregious official conduct can be said to be 'arbitrary in the constitutional sense.'" *Id.* at 846. If the Court finds Plaintiffs' allegations meet this culpability standard, it must "next determine whether there exist historical examples of recognition of the claimed liberty protection at some appropriate level of specificity." *Morris v. Dearborne*, 181 F.3d 657, 668 (5th Cir. 1999).

Conduct that shocks the conscience has been described in several ways:

25

> It has been described as conduct that "violates the decencies of civilized conduct"; conduct that is "so brutal and offensive that it [does] not comport with traditional ideas of fair play and decency"; conduct that "interferes with rights implicit in the concept of ordered liberty"; and conduct that "is so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience."

*Doe ex rel. Magee*, 675 F.3d 849, 867 (5th Cir. 2012). The "constitutional concept of conscience shocking . . . points clearly away from liability, or clearly toward it." *Lewis*, 523 U.S. at 848. On one end, there is "[c]onduct intended to injure in some way unjustifiable by any government interest", which "is the sort of official action most likely to rise to the conscience-shocking level." *Tyson*, 42 F.4th at 518 (citation omitted). On the other end is negligence, which is "categorically beneath the threshold of constitutional due process." *Lewis*, 523 U.S. at 849. "[I]n some circumstances," the shocks the conscience standard is satisfied by showing conduct resulting from deliberate indifference, which falls within the middle range of the spectrum. *M.D. by Stukenberg v. Abbott*, 907 F.3d 237, 251 (5th Cir. 2018).

Demonstrating deliberate indifference is a "significantly high burden . . . to overcome." *Hernandez v. Tex. Dep't of Protective & Regul. Servs.*, 380 F.3d 872, 882 (5th Cir. 2004) (quotation omitted). "To act with deliberate indifference, a state actor must consciously disregard a known and excessive risk to the victim's health and safety." *M.D. by Stukenberg*, 907 F.3d at 252. "Stated differently, the State must be both aware of facts from which the inference could be drawn that a

substantial risk of serious harm exists, and it must also draw that inference." *Id.* at

252 (internal quotations omitted). This is "a degree of culpability beyond mere

negligence or even gross negligence; it 'must amount to an intentional choice, not

merely an unintentionally negligent oversight.'" *Id.* A government actor "is not

deliberately indifferent to a substantial risk of serious harm if, aware of the risk, it

responds reasonably even if the harm ultimately was not averted." *Id.* (cleaned

up).

In *Pierce*, the Court emphasized the intent necessary for a deliberate-

indifference finding:

> A due process violation results from *deliberate* decisions
> of government officials to deprive a person of life,
> liberty, or property." *Daniels v. Williams*, 474 U.S. 327,
> 331 (1986). "Actions and decisions by officials that are
> merely inept, erroneous, ineffective, or negligent do not
> amount to deliberate indifference . . . ." *Alton v. Texas
> A&M Univ.*, 168 F.3d 196, 201 (5th Cir. 1999) (citation
> omitted). As the Seventh Circuit has explained, deliberate
> indifference entails "conduct that reflects complete
> indifference to risk—*when the actor does not care
> whether the other person lives or dies, despite knowing
> that there is a significant risk of death*." *Salazar v. City of
> Chicago*, 940 F.2d 233, 238 (7th Cir. 1991) (citations and
> internal quotations omitted).

600 F. App'x at 198.

Conduct that may be deliberately indifferent in one context may not be in

another. *Lewis*, 523 U.S. at 850. The Court's "concern with preserving the

constitutional proportions of substantive due process demands an exact analysis of

27

circumstances before any abuse of power is condemned as conscience shocking." *Id.*

Plaintiffs allege the City Defendants' actions and inactions acted demonstrate "deliberate indifference to the known risks of harm" that exposure to contaminated water "would, and did, cause to Plaintiffs."  ROA.1529.  The District Court conducted the exacting analysis the Supreme Court recommended in *Lewis*, analyzing each of the alleged acts or failures to act Plaintiffs assert violated their bodily integrity.  The District Court found none did.

> 1.  Alleged inaction of the City Defendants does not give rise to a claim for bodily integrity.

The District Court summarized Plaintiffs' assertions of inaction as follows: (1) the City Defendants "knew that portions of the public water system were failing due to the inadequate treatment of low-pH water", but "failed to take adequate measures to remedy the issues"; (2) they "failed to maintain equipment and staff the City water department with qualified employees"; and (3) they "failed to comply with the Compliance Plan issued by the MSDH."[25]  ROA.1424.  The District Court found those allegations insufficient to state a bodily integrity claim because they "amount[ed] to a failure to protect plaintiffs who are not in a special

---

[25]     Plaintiffs argue the City's violations of the SDWA and Compliance Plan is enough to demonstrate conduct that shocks the conscience.  Appellant Br. [Doc. 59] at 43.  Fifth Circuit case law refutes that unsupported argument.  *See Doe*, 675 F.3d at 868 (finding violations of state law, even if done in bad faith, is not conscience-shocking conduct).

relationship with the state from a foreseeable risk of harm."  ROA.1426.  The

District Court is correct.

The Due Process Clause prohibits a state from "depriv[ing] any person of

life, liberty, or property, without due process of law."  U.S. CONST. amend. XIV, §

1  That right is understood as a "limitation on the State's *power to act*, not as a

guarantee of certain minimal levels of safety and security."  *DeShaney v.

Winnebago County Dep't of Soc. Servs.*, 489 U.S. 189, 195 (1988) (emphasis

added).  The Due Process Clause confers "no affirmative right to governmental

aid, even where such aid may be necessary to secure life, liberty, or property

interests".  *Id.* at 196.  Hence, the City Defendants' alleged failures cannot amount

to a willful violation of Plaintiffs' right to bodily integrity.  The City Defendants

do not have an affirmative constitutional duty to provide a contamination-free

environment, water services, or clean water.[26]

The Supreme Court's ruling in *Collins* is illustrative.  Although the decedent

in *Collins* was a government employee, the Court was clear the claim of a private

citizen would be analyzed "in a similar manner".  503 U.S. at 119.  In *Collins* the

---

[26]     Plaintiffs do not plead a special, custodial relationship between them and the City vis-à-vis water services.  The pleadings do not imply a special relationship, either.  While Plaintiffs aver the City's ordinances require the City to provide water and Plaintiffs to accept water from the public water system, ROA.1455, that alone is not sufficient to establish a special relationship between the City and Plaintiffs.  Laws requiring Plaintiffs to pay for water Plaintiffs elect to receive from the City are not comparable to incarcerating prisoners, or institutionalizing mental health patients, or placing children in foster care.  *See generally Doe*, 675 F.3d at 861.

widow of a city sanitation worker who died of asphyxia from sewer gas after he

entered a manhole to work on a clogged sewer line sued the city. *Id.* at 117, 129.

The government defendant knew about the hazard; the decedent's supervisor was

previously rendered unconscious in a manhole several months before decedent was

hired. *Id.* at 118 n.1. The *Collins* plaintiff did not allege the government defendant

"deliberately harmed" her husband. *Id.* at 125. Instead, she advanced two separate

theories: (1) "that the Federal Constitution imposes a duty . . . to provide . . .

minimal levels of safety and security" and (2) the government defendant's

deliberate indifference to the plaintiff's husband's safety "was arbitrary

government action that must 'shock the conscience' of federal judges." *Id.* at 126.

The Court dismissed the first theory as "unprecedented", finding "[n]either

the text nor the history of the Due Process Clause supported the plaintiff's claim

that the government [defendant's] duty to provide . . . a safe . . . environment is a

substantive component of the Due Process Clause." *Id.* at 126-27.

The Court rejected the second theory, finding the plaintiff's "claim is

analogous to a fairly typical state-law tort claim: The city breached its duty of care

to her husband by failing to provide a safe . . . environment." *Id.* at 128. And "the

Due Process Clause 'does not purport to supplant traditional tort law in laying

down rules of conduct to regulate liability for injuries that attend living together in

society.'" *Id.* In reaching its conclusion, the Court presumed:

> [T]he administration of government programs is based on
> a rational decisionmaking process that takes account of
> competing social, political, and economic
> forces. Decisions concerning the allocation of resources
> to individual programs, such as sewer maintenance, and
> to particular aspects of those programs, such as the
> training and compensation of employees, involve a host
> of policy choices that must be made by locally elected
> representatives, rather than by federal judges interpreting
> the basic charter of Government for the entire
> country. The Due Process Clause "is not a guarantee
> against incorrect or ill-advised . . . decisions."

*Id.* at 128-29

Plaintiffs' claims are tantamount to the plaintiff's claims in *Collins* and

should be dismissed for the same reasons. Plaintiffs' claims are more akin to a tort

claim for breach of a duty of care. The Constitution does not empower courts to

second-guess the decisions of the City Defendants, who are charged with the

difficult responsibility of allocating limited resources to myriad problems, issues,

and priorities, including the City's aging water system.

      2.    Alleged actions of the City Defendants do not give rise to a
             claim for bodily integrity claim.

The District Court categorized Plaintiffs' assertions regarding the actions of

the City Defendants as: (1) the City Defendants switched portions of the public

water system from well water to surface water; (2) the City Defendants relied on

Trilogy's recommendation; (3) the City issued boil-water notices; and (4) the City

Defendants made public pronouncements. ROA.1428. This section will address

the first three categories of allegations.  Public pronouncements will be discussed separately.  The first three categories do not establish a basis for a bodily integrity claim.

> i.   The decision to switch water sources was not made by a City Defendant.

Plaintiffs cannot show that the decision to switch the source for a minority of connections from well water to surface water, the source for the vast majority of the connections, was made with deliberate indifference.  To begin with, no individually named City Defendant created the plan to abandon the well water system.  *See* ROA.1200-1201.  The Maddox Road Booster Station project was substantially complete before any individually named City Defendant assumed office.  Under other mayors and public work directors, the City spent millions of dollars on infrastructure upgrades necessary to move all connections to surface water.  *See* ROA.1200-1201.

But even if the City Defendants could somehow be responsible for a decision they did not make, Plaintiffs cannot show the decision was made with deliberate indifference to Plaintiffs' constitutional rights.  Plaintiffs do not plead any City Defendant knew that moving all users to surface water would cause lead to leach into the water system but decided to do so anyway.  Allowing implementation of a multimillion project that predated any City Defendants does not shock the conscience—that is, it is neither conduct that violates the decency of

civilized conduct, nor is it so brutal and offensive that it does not comport with

traditional ideas of fair play and decency.  Instead, following through on a project

started by a previous administration is a part of the regular administration of

municipal government.

Importantly, the switch from well water to surface water is not at all akin to

what occurred in Flint.  Flint switched the source water for all users from the

Detroit Water and Sewerage Department to the Flint River.  *See Mason v.*

*Lockwood, Andrews & Newnam, P.C.*, 842 F.3d 383, 387 (6th Cir. 2016).  Flint

effectively switched its users from a known source to an unknown, untested

source.  The facts are different here.  The City switched a minority of users from a

known source to another known source that had successfully supplied the majority

of the City water users for years.

Flint also failed to implement any anti-corrosion measures on the Flint River

water.  *Mason*, 842 F.3d at 387; *see also Guertin*, 912 F.3d 907, 915 (6th Cir.

2019).  Flint did not treat the water at all.  That is not the case here.  While

Plaintiffs may criticize the effectiveness of the City's water treatment equipment,

they cannot allege the City did not attempt to treat the water it provided.  *See, e.g.*

ROA.  1494-1495.  Lastly, Plaintiffs have not alleged the City Defendants

switched water sources to save money to the detriment of Plaintiffs' health.  *See*

*Guertin*, 912 F.3d at 926.

33

>    ii.    The decision to follow Trilogy's recommendation was
>           not arbitrary.

Plaintiffs cannot show the City Defendants committed a constitutional violation by hiring Trilogy. No City Defendant had the legal power or right to enter into a contract with Trilogy. The City Council, on behalf of the City, approved the contract with Trilogy. *See* ROA.1493. Further, the State of Mississippi required the City to hire an engineering firm to conduct a corrosion control study and make recommendations. *See* ROA.1571. Contrary to Plaintiffs' misleading allegations, Trilogy was a licensed professional engineering firm that employed a licensed professional engineer who specialized in water infrastructure and had a prior relationship with the City. There is nothing at all conscience-shocking about hiring a licensed professional engineering firm the State mandated and approved.

The Court should reject Plaintiffs' attempt to hold either Yarber or Powell responsible for the decision to follow Trilogy's soda ash recommendation. Powell left the City in May 2016 before Trilogy made any recommendations. She cannot be held responsible for decisions made after she left office. And Yarber did not act with deliberate indifference.

The Fifth Circuit has held efforts to remediate a situation, even if inadequate, do not show deliberate indifference unless the state actor "*knew* they were insufficient and intentionally failed to do more out of indifference to [the

plaintiff's] well-being." *Estate of Aguirre v. San Antonio*, 995 F.3d 395, 421 (5th Cir. 2021) (finding gross negligence insufficient to establish the kind of subjective, deliberate indifference that must be demonstrated to establish a due process violation).  Plaintiffs do not allege Yarber subjectively knew that the soda ash proposal would be insufficient and intentionally failed to do more.  It is unreasonable to expect Yarber, who is not a professional engineer, to have recognized the issue with Trrilogy's recommendation to use soda ash.  Especially where Trilogy is a professional engineering firm hired for that purpose and its recommendation was approved by the State of Mississippi.

Moreover, the City Defendants provide a rational basis for the decision to move forward with Trilogy's recommendation over Willie Bell's to fix a lime-feed pump, because the City could not determine whether fixing the pump would address the corrosion-control issues without first conducting an optimization study.  Plaintiffs cannot use the Constitution to play armchair quarterback vis-à-vis that decision.

iii.    The City Defendants did not issue boil-water notices to address lead in the water system.

Issuing boil-water notices is not arbitrary government action that shocks the conscience.  Those decisions are made in the face of competing, often conflicting issues, problems, and priorities.  For example, in addition to alleged lead issues, Plaintiffs allege the public water system has problems with bacterial contaminants,

which may be addressed by a boil-water notice. (Plaintiffs do not allege the City Defendants issued boil-water notices in response to issues with lead. ROA.1491-1492.). Moreover, efforts to remediate a situation by issuing boil-water notices, even if inadequate, do not show deliberate indifference. *Estate of Aguirre*, 995 F.3d at 421. There are no allegations the City Defendants knew the boil water notices were insufficient and intentionally failed to do more out of indifference to Plaintiffs' well-being.

> 3. Alleged public pronouncements made in response to an environmental crisis do not give rise to a claim for bodily integrity.

Plaintiffs misconstrue the District Court's ruling with regard to public pronouncements and the "something more" standard they infer the District Court adopted. Appellant Br. [Doc. 59] at 35-36. Their analysis appears to be backwards. The District Court's conclusion is straightforward: something more than deliberate indifference is required to shock the conscience where Plaintiffs alleged the City Defendants made misleading statements in the face of an environmental crisis. That "something more" is the intent to cause harm.

> i. The Complaint does not allege any City Defendant intended to harm Plaintiffs.

The Supreme Court has held in other contexts that the deliberate indifference standard does not apply to every substantive due process claim. For instance, the Court has recognized that a "much higher standard of fault than deliberate

indifference has to be shown for officer liability in a prison riot." *Lewis*, 523 U.S.

at 852-53. And in *Lewis*, the Court refused to apply a deliberate-indifference

culpability standard to high-speed automobile chases. *Id.* at 836. The Court

reasoned, "Deliberate indifference that shocks in one environment may not be so

patently egregious in another, and our concern with preserving the constitutional

proportions of substantive due process demands an exact analysis of circumstances

before any abuse of power is condemned as conscience-shocking." *Id.* at 850.

To date, no Supreme Court or Fifth Circuit case has applied "deliberate

indifference" to allegations a governmental officer made misleading statements in

response to an environmental crisis to determine a government official's conduct

"shocked the conscience".[27] The Court should not do so here.

Instead, the Court should find misleading statements made in the face of an

environmental crisis could shock the conscience only when they are made with an

intent to cause harm. First, that is the less expansive extension of substantive due

process in this uncharted area. Second, this is the standard recognized by the

Second Circuit in *Benzman v. Whitman*, 523 F.3d 119 (2d Cir. 2008), and

---

[27]    No Supreme Court or Fifth Circuit case has found a substantive due process claim arising
from public misstatements. The Court should practice "judicial self-restraint" before
"expand[ing] the concept of substantive due process because guideposts for responsible
decisionmaking in this unchartered area are scarce and open-ended." *Collins*, 503 U.S. at 125.

*Lombardi v. Whitman*, 485 F.3d 73 (2d Cir. 2007).[28]  Read together, those cases stand for the proposition that—where the factual averments in the plaintiff's complaint show a government official made misstatements in response to an environmental crisis, having "to reconcile competing government obligations"— only an intent to harm can shock the conscience in a way that justifies constitutional liability.  *See Benzman*, 523 F.3d at 128 ("It is far from clear that a complaint adequately alleging knowing falsity would have survived dismissal in the absence of an allegation of intent to injure, and we are not ruling that such a complaint would have stated a valid *Bivens* claim"). [29]

---

[28]    In addition to *Benzman* and *Lombardi*, in *Las Lomas Land Co., LLC v. City of L.A.*, 177 Cal. App. 4th 837, 857, 99 Cal. Rptr. 3d 503, 520 (2009), a California Court of Appeals summarily rejected a substantive due process claim based upon a public official's making "misleading public statements," finding that "[t]hese allegations, if true, do not amount to an outrageous or egregious abuse of power of constitutional dimension." The case, however, dealt with an alleged deprivation of a property interest, not a bodily integrity interest.  *See also Prucker v. Town of Wales*, No. 3:20-cv-11917-KAR, 2023 U.S. Dist. LEXIS 41483, at *29-30 (D. Mass. 2023) (holding "dishonest and misleading" statements insufficient to shock the conscience in a property interest case); *Srinivas v. Picard*, 648 F. Supp. 2d 277, 288 (D. Conn. 2009) (holding, in property interest case, "intentionally and maliciously fabricated and disseminating falsehoods to get someone fired" would be actionable, making "simply misleading" statements was constitutionally insufficient.).

[29]    Of note, the Complaint and its exhibits do not demonstrate the City Defendants made a knowingly false statement.  Instead, they made those statements based on the imperfect, limited information they had at the time they made the statements.

For example, the City's representation that "this is not a widespread issue, although we are treating it very seriously" was supported by the fact that, of the 58 homes from which lead-testing samples were taken, only 13 of them exceeded the actionable level.  The City also reassured the public the water was safe to drink subject to the user taking certain measures and precautions.  Nowhere in Plaintiffs' Complaint do Plaintiffs dispute the City's water is safe to drink subject to those precautions.  Moreover, the statements the Jackson water crisis was not

*Benzman* and *Lombardi* dealt with pronouncements made about air quality following the September 11, 2001, attacks. Although the State of Mississippi's finding of actionable lead levels in the City's water supply was not a crisis of the same dimension, it was nonetheless a crisis that required the City to quickly reconcile competing policy considerations—e.g., balancing warning citizens about the lead exceedance without inciting unjustified panic—in choosing how to respond.

Absent allegations of an intent to harm—which Plaintiffs concede does not exist in this civil action, *see* ROA.1351—Plaintiffs have failed to state a bodily-integrity claim against the City Defendants. To hold otherwise would have a chilling effect on a governmental entity's willingness to share information with the public in the face of a crisis for fear of constitutional liability later. Substantive due process liability should not be used to impede or dictate government agencies' policy decisions on how information is shared with the public in the face of a crisis, even if some of those decisions could be criticized in retrospect.

---

like Flint were not false, because the City did have corrosion-control measures in place, unlike Flint, even though those measures needed to be improved and upgraded.[29]

          ii.      The City Defendants' public pronouncements were not
made with deliberate indifference.

Even under the lower deliberate-indifference standard, the City's alleged

misstatements do not shock the conscience.

As shown, after the City received notice of a lead exceedance, it

immediately informed the public, providing specific recommendations and

precautions as to how the water may be consumed safely.  The City has been

consistent in providing those precautions.  None of the City's other statements

were patently false in light of the City Defendants' guidance, which discouraged

the use of the water under certain circumstances.

Whether the City should have said more (or nothing at all) does not give rise

to a substantive due process claim.  Finding otherwise would, without guidance,

greatly expand the scope of substantive-due-process.  The Supreme Court has

cautioned courts not to do so, and the City Defendants ask the Court to follow that

guidance here.

          iii.     There are no concrete examples arising from the
established bodily integrity jurisprudence or from our
Nation's history or traditions that support the right
asserted here—protection from public statements.

Even if Plaintiffs could establish the City's public pronouncements shocked

the conscience, the Court's analysis does not end there.  To find a due process

violation, the Court must determine whether there has been historical recognition

of the claimed right at some appropriate level of specificity. *Morris*, 181 F.3d at 668. That analysis is based on the state of the law as it existed "at the time of the incident at issue." *Id.* The Supreme Court directs courts to use a "restrained methodology" that looks to "concrete examples involving fundamental rights found to be deeply rooted in our legal tradition." *Washington v. Glucksberg*, 521 U.S. 702, 721-22 (1997). The concrete examples set forth the "outlines of the 'liberty' specially protected by the Fourteenth Amendment". *Id.* at 722.

No concrete examples arising from the established bodily integrity jurisprudence or from our Nation's history or traditions support the right asserted here, i.e., a right to protection from public statements that, somewhere down the line, result in exposure to an environmental contaminant.

In the key Fifth Circuit cases finding a violation of the right to bodily integrity, the plaintiff was in the government's custody or care—a student at school, a child in foster care, a patient at a state hospital, a prisoner, or an arrestee. And in those cases, the government has generally either directly violated the plaintiff's body or exercised its power to coerce an intrusion.[30] This is why the

---

[30] *M.D. by Stukenberg*, 907 F.3d at 250, dealt with more than just the right to bodily integrity. The case considered the heightened substantive due process of right of "personal security and reasonably safe living conditions" because the plaintiffs, children in foster care, were in a "special relationship" with the State. No such special relationship exists here. ROA.1425 ("Plaintiffs are non-custodial citizens. They do not allege a 'special relationship' between themselves and the City.").

right to bodily integrity appears to arise almost exclusively in the context of sexual abuse cases.  The Supreme Court cases addressing bodily integrity claims confirm that the right is violated when the state forces intrusion upon the claimant's body.

No Fifth Circuit or Supreme Court case is compatible with the "careful description" of the right at issue here: protection from exposure to lead-contaminated water allegedly caused by public pronouncements. Expansion of substantive due process into this area would radically change how municipalities respond to all manner of public health crises with limited or imperfect information. In this case the City could have merely issued the notices required by the SDWA with every water bill, eviscerating Plaintiffs' claim, but it chose to do more, holding press conferences and making statements to the media to spread the message of what precautions were necessary to consume the water safely.  At the same time, the City did not want to incite unnecessary panic.  Those are critical executive policy decisions that should not be policed with constitutional liability or subjected to strict scrutiny on judicial review.  Otherwise, every public official responding to a public health crisis—such as an epidemic, a hurricane, or an oil spill—will face potential liability for making statements based on incomplete or imperfect information.

**III.    Adoption of the state-created danger theory of liability is not appropriate here.**

42

The Fifth Circuit has declined to recognize the state-created danger theory of liability on several occasions. *Fisher v. Moore*, 73 F. 4th 367, 372 & n.13 ("We have repeatedly declined to recognize the state-created danger doctrine.") (collecting cases) (internal quotations omitted). That said, the Court has articulated elements of a claim, which Plaintiffs cannot meet. Plaintiffs fail to plead (1) a third party injured them. Therefore, the Court need not consider Plaintiffs' request to adopt the state-created danger theory; adoption of the theory would not impact this case. *See Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011) ("Courts should think carefully before expending scarce judicial resources to resolve difficult and novel questions . . . that will have no effect on the outcome of the case.").

Because Plaintiffs cannot meet the Fifth Circuit's standard for a state-created danger claim, Plaintiffs ask the Court to disregard it and adopt the Tenth Circuit's standard instead. The Court need not consider that request, either, because Plaintiffs' pleadings do not meet that standard.

### A.    Plaintiffs have not pled a state-created danger claim under the standard articulated by this Court.

1.    Plaintiffs do not allege they suffered an injury caused by a third-party, non-state actor.

The Fifth Circuit recognizes the state-created danger theory of liability redresses a state actor's failure "to protect an individual from injuries inflicted by a third party if the state actor played an affirmative role in creating or exacerbating a

43

dangerous situation that led to [an] individual's injury" only.  *See McClendon v.*

*City of Columbia*, 305 F.3d 314, 324 (5th Cir. 2002)The Court has identified the

following elements a plaintiff must demonstrate to establish a state-created-danger

claim: "(1) that the environment created by the state actor is dangerous, (2) the

state actor must know it is dangerous (deliberate indifference), and (3) the state

actor must have used its authority to create an opportunity that would not otherwise

have existed for the *third party's crime* to occur."  *Dixon v. Alcorn Cnty. Sch.*

*Dist.*, 499 F. App'x 364, 366-67 (5th Cir. 2012) (emphasis added).[31]

　　　Plaintiffs' pleadings fail to identify a third-party, non-state actor who is

responsible for their injuries, *see* ROA. 1530-1533, which is fatal to a state-

created-danger claim under the framework acknowledged by this Court.  *See*

*Kinzie v. Dallas Cty. Hosp. Dist.*, 106 F. App'x 192, 195 (5th Cir. 2003) (holding

the plaintiff did not allege the "requisite elements" of a state-created danger claim

because he "did not allege that he was harmed by a third party.").  Plaintiffs

concede that deficiency in their briefing, stating the City Defendants' "actions

---

[31]　　　The often-articulated test includes two elements.  *See, e.g.*, *Doe*, 675 F.3d at 864-65
(explaining "the state-created danger theory requires a plaintiff to show (1) the defendants used
their authority to create a dangerous environment for the plaintiff and (2) that the defendants
acted with deliberate indifference to the plight of the plaintiff.").  "[T]he second element is then
subdivided into three prongs, which combine to subsume the original first element." *Dixon*, 499
F. App'x at 367 n.3.  *See generally Doe*, 675 F.3d at 865 (stating that to establish deliberate
indifference, a plaintiff must plead facts that "the environment created by the state actors must be
dangerous; they must know it is dangerous; and they must have used their authority to create an
opportunity that would not otherwise have existed for the third party's crime to occur").

harmed Plaintiffs independently of any actions by a third party." Appellant Br.
[Doc. 59], at 52. They also admit "third-party harms are not the focus of the
instant case". *Id.* at 62.

> 2. Plaintiffs fail to plead the City Defendants were aware of an
> immediate danger to them specifically.

In the Fifth Circuit, the state-created-danger theory "is inapposite without a
known victim." *Doe*, 675 F.3d at 865. A plaintiff must "demonstrate the existence
of an immediate danger facing a known victim." *Id.* at 866. Identifying a known
victim requires more than singling out a segment of the general public at large that
may be affected by state action; the test articulated by the Fifth Circuit requires
plaintiffs to plead the state actor was aware of an immediate danger to a specific
and identifiable individual. *See id.* at 865-66; *see also Dixon*, 499 F. App'x at 368
(finding potential harm to students in general is inadequate to satisfy the known-
victim requirement).

The Complaint does not allege the City singled out any Plaintiff, instead
alleging each Plaintiff is a "Jackson water user." *See* ROA. 1532. That allegation
is insufficient. *See Cancino v. Cameron Cnty.*, 794 F. App'x 414, 417 (5th Cir.
2019) ("It is not enough for the Plaintiffs to allege that the Defendants knew of a
risk to a class of people that included the Plaintiffs, namely people whose
'geographical proximity . . . put them in a zone of danger.'"); *Rios v. City of Del
Rio*, 444 F.3d 417, 424 n.7 (5th Cir. 2006) ("[L]iability exists only if the state actor

is aware of an immediate danger facing a known victim and does *not* extend to all foreseeable victims.") (emphasis in original) (internal quotations omitted). Plaintiffs' class allegations state they are bringing suit on behalf of all persons who reside in Hinds County and were exposed to water from the City's public water system from January 1, 2009 to present. *See* ROA. 1524. Nothing in the Complaint suggests the City Defendants knew any named Plaintiff would be at an enhanced risk of harm from their operation of the water system. Not even the Plaintiffs know the identity of all the un-named Hinds County residents they purport to represent. The absence of a known victim guts a claim for state-created danger.[32]

### B.   Appellants have not pled essential elements of a state-created danger claim under Tenth Circuit jurisprudence.

#### 1.   Plaintiffs do not allege they suffered an injury caused by a third-party, non-state actor.

Plaintiffs ask the Court to abandon the elements of a state-created danger claim it has consistently recognized and adopt the elements recognized by the Tenth Circuit. Appellant Br. [Doc. 59], at 62-63. Plaintiffs do so, presumably,

---

[32] The Fifth Circuit has not considered a state-created-danger claim under a set of facts similar to those featured here, but federal courts in the Sixth Circuit rejected a virtually identical state-created-danger theory of liability in the "Flint Water Cases" because the plaintiffs failed to identify a private, third-party actor. *See, e.g.*, *Marble v. Snyder*, 453 F. Supp. 3d 970, 989 (E.D. Mich. 2020). The courts also found the plaintiffs failed to identify a special danger to each plaintiff in particular. *See id.* at 990-91.

because they believe the Tenth Circuit does not require a third-party injury to state a state-created danger claim. *See id.* at 65-68. Plaintiffs are wrong.

In the Tenth Circuit the state-created danger theory allows aggrieved parties to hold state officials liable for the acts of non-state, private parties where the state officials created the danger that caused the harm. *Estate of B.I.C. v. Gillen*, 710 F.3d 1168, 1173 (10th Cir. 2013) ("[S]tate officials can be liable for the acts of private parties where those officials created the very danger that caused the harm."). Therefore, a "precondition" to stating a state-created danger claim in the Tenth Circuit are allegations "that there was private violence." *Estate of B.I.C. v. Gillen*, 761 F.3d 1099, 1105 (10th Cir. 2014). Stated differently, "[t]o invoke the danger-creation theory, a plaintiff must show a state actor affirmatively acted to create or increases a plaintiff's vulnerability to, danger from private violence." *T.D. v. Patton*, 868 F.3d 1209, 1222 (10th Cir. 2017) (internal quotations omitted). On a motion to dismiss, the Tenth Circuit will not even address the six elements it recognizes for a state-created danger claim if the pleadings fail to allege private violence. *See Matthews v. Bergdorf*, 889 F.3d 1136, 1150 (10th Cir. 2018).

Private violence is violence perpetuated by non-state actors. *See Uhlrig v. Harder*, 64 F.3d 567, 572 (10th Cir. 1995) (finding the state could be liable under a state-created danger theory of liability "where a third party other than a state actor caused the complained of injury"); *Moore v. Guthrie*, 438 F.3d 1036, 1042 (10th Cir.

47

2006) (finding a state actor could not be held liable under the state-created danger

doctrine when the alleged injury was caused by another state actor). *See generally*

*Gray v. Univ. of Colo. Hosp. Auth.*, 672 F.3d 909, 918 (10th Cir. 2012) (finding

private violence includes self-harm inflicted by a non-state actor).

Plaintiffs do not plead private violence. Thus, they cannot meet one of the

preconditions for a state-created danger claim in the Tenth Circuit, which would

warrant dismissal.

> 2. Plaintiffs fail to plead the City Defendants were aware of an
>    immediate danger to them specifically.

In the Tenth Circuit the state-created danger doctrine does not apply where

the state actor's alleged conduct is not "directed at a discrete plaintiff". *Gray*, 672

F.3d at 920. Plaintiffs have fallen woefully short of pleading the City Defendants'

conduct was directed at a specific Plaintiff. Plaintiffs are bringing suit on behalf of

all persons residing in Hinds County who was allegedly exposed to water from

Jackson's public water system. *See* ROA.1524. In their brief, Plaintiffs appear to

amend the allegations in the Complaint to limit the potential plaintiffs to those who

"can each be identified individually by name through records in the possession of

the City of Jackson which show the residences connected to the public water

system." Appellant Br. [Doc. 68], at 68. Putting aside Plaintiffs cannot amend

their pleadings through their appellate briefing, Plaintiffs' proposed revision is

unavailing.

*Ruiz v. McDonnell* is elucidatory. 299 F.3d 1173, 1183 (10th Cir. 2002) the Tenth Circuit found a plaintiff was not a member of a discrete group by virtue of being a customer of a negligently licensed daycare because any parent could have brought their child to the facility. When patrons of a daycare cannot be considered a discrete and limited group, every possible user of the City's public water system is certainly not a discrete and limited group.

## IV. The individually named City Defendants are entitled to qualified immunity, because the law was not clearly established when the actions giving rise to the Complaint occurred.[33]

"When a defendant invokes qualified immunity, the burden shifts to the plaintiff to demonstrate the inapplicability of the defense." *Club Retro, L.L.C. v. Hilton*, 568 F.3d 181, 194 (5th Cir. 2009) (citation omitted). "Public officials are entitled to qualified immunity unless the plaintiff can plead specific allegations, demonstrating (1) the violation of a constitutional right that (2) was clearly established at the time of the alleged misconduct." *Linicomn v. Hill*, 902 F.3d 529, 533 (5th Cir. 2018)). As shown *supra*, Plaintiffs' have not pled a cognizable violation of a constitutional right.

---

[33] Plaintiffs confessed at the low court their negligence claim fails as to the individually named City Defendants.

The District Court found Plaintiffs also cannot establish a violation of clearly-established law.[34]  A law is "clearly established" when "[t]he precedent [is] clear enough that every reasonable official would interpret it to establish the particular rule the plaintiff seeks to apply.  Otherwise, the rule is not one that 'every reasonable official' would know." *District of Columbia v. Wesby*, 138 S. Ct. 577, 590 (2018) (cleaned up).  A court must determine whether a "controlling authority" or "robust consensus of cases of persuasive authority" establishes the unlawfulness of the conduct at issue. *Ashcroft*, 563 U.S. at 741-42 (citation omitted); *see also McClendon*, 305 F.3d at 327 n.10.  "Generally, to satisfy this standard, the plaintiff must 'identify[] a case in which an officer acting under similar circumstances was held to have violated the [Constitution], and…explain[] why the case clearly proscribed the conduct of that individual officer.'" *Cope v. Cogdill*, 3 F.4th 198, 205 (5th Cir. 2021)).

"While an exact case on point is not required, the confines of the officers' violation must be 'beyond debate.'" *Id.*  "*Broad general propositions are not enough to overcome qualified immunity.*" *Id.* (emphasis added).  "Plaintiffs are

---

[34]    Judge Reeves reached the same conclusion.  *J.W.*, 663 F. Supp. 3 at 640-44.  There is no disagreement in the Southern District of Mississippi the individually named City Defendants are entitled to qualified immunity based on the facts featured here.

only excused of their obligation to identify an analogous case in 'extreme circumstances' where the constitutional violation is 'obvious.'" *Id.* at 206.

*Gasper* is the only Fifth Circuit case remotely analogous to this one. There the court found no constitutional claim. *Gasper*, 577 F.2d at 899. In light of the total absence of "a case in which an officer acting under similar circumstances was held to have violated" a plaintiff's right to substantive due process, *Cope*, 3 F.4th at 205, no City Defendant could reasonably have expected to find themselves being subjected to strict scrutiny judicial review of decisions they made to address problems with the public water system.

Although Plaintiffs cite the SDWA and EPA regulations, *see, e.g.*, Appellant Br. [Doc. 59] at 43-45, those statutes are irrelevant to a qualified-immunity analysis. *See Gagne v. Galveston*, 805 F.2d 558, 560 (5th Cir. 1986) ("[N]either federal nor state officials lose their immunity by violating the clear command of a statute or regulation -- of federal or of state law -- unless *that statute or regulation* provides the basis for the cause of action sued upon.") (citation omitted) (emphasis added). The inquiry is limited to whether a constitutional right was clearly established at the relevant time.

There also was no "robust consensus" of persuasive authority that clearly established a constitutional violation. Courts uniformly rejected constitutional claims arising from environmental harms until the Sixth Circuit's decision in

51

*Guertin*.  But, the only authority that can be considered is that in place when the alleged violation occurred.  *See Kokesh v. Curlee*, No. 20-30356, 2021 U.S. App. LEXIS 28607, at *15-20 (5th Cir. Sept. 21, 2021) (quoting *Brosseau v. Haugen*, 543 U.S. 194, 198 (2004)).  *Guertin* was decided in 2019.  Powell left office in 2016; Yarber left office in 2017; and Smash left office in 2017.  The alleged conduct of Miller occurred in 2018.  And there are no allegations Mayor Lumumba did anything more than fail to staff the water treatment plants, which was not at issue in *Guertin.  Guertin* is not applicable considering those undisputed facts.

*Guertin* is also not persuasive on whether the City Defendants' conduct was "clearly proscribed."  *See Joseph ex rel. Estate of Joseph v. Bartlett*, 981 F.3d 319, 345 (5th Cir. 2020).  *Guertin* relies upon no Supreme Court case with analogous facts.  The cases *Guertin* cites deal with forced surgery (*Winston v. Lee*, 470 U.S. 753 (1985)); forced medication (*Harper*); forced stomach-pumping (*Rochin*); and the burden of proof for withdrawal of life support (*Cruzan v. Dir., Mo. Dep't of Health*, 497 U.S. 261, 269-70 (1990)).  More factually analogous are *Mattoon*, 980 F.2d 1, which dealt with contamination of a public water supply, or *Benzman*, which dealt with allegedly false statements about the risk of a pollutant.  Further, as noted by the District Court in *J.W.*, Guertin was based on a body of bodily-integrity law from the Sixth Circuit that is not present in the Fifth Circuit.  663 F. Supp. 624, 643.

52

*Guertin* also found the constitutional violations in that case were obvious.  It did so based on conduct that is not featured here.  Flint officials were specifically warned of the precise dangers associated with switching water sources.  *See, e.g., Waide* v. *Early*, 960 F.3d 303, 326 (6th Cir. 2020); *Guertin*, 912 F.3d at 926-27. Flint officials lied about the source of a Legionnaires outbreak even though they knew it was the Flint River.  *Waide*, 960 F.3d at 325.  They also lied about test results.  *Id*. at 326.  Especially egregious, Flint officials refused to switch water sources after they knew river water was harming Flint residents.  *Waide* 960 F.3d at 325-26; *Guertin*, 912 F.3d at 927.

In this Circuit, the exception for "obvious" violations is narrow: "plaintiffs are only excused of their obligation to identify an analogous case in extreme circumstances where the constitutional violation is obvious."  *Cope*, 3 F.4th at 206 (internal quotations omitted).  "[O]bvious cases are exceedingly rare."  *Henderson v. Harris Cnty.*, 51 F.4th 125, 135 (5th Cir. 2022).  As shown, there is nothing obviously unconstitutional about public servants making difficult decisions when faced with limited resources and competing crises, particularly given that "substantive due process is not the clearest of Supreme Court doctrines . . . [and] the caselaw in this area is contradictory, imprecise, and, well, messy."  *Daves v. Dall. Cty.*, 984 F.3d 381, 411 (5th Cir. 2020) (internal quotations omitted).  None of the City Defendants' conduct was "so blatant that [government officials] need

no on-point precedent to know their conduct is illegal." *Laviage v. Fite*, 47 F.4th 402, 408 (5th Cir. 2022). Certainly, when the *Guertin* court itself divided 2-1 over whether a constitutional violation had occurred at all, it is not "beyond debate" that the individual Defendants here violated Plaintiffs' constitutional rights.

## V.    Smash is entitled to a dismissal because he did nothing wrong.

Plaintiffs fail to allege Smash engaged in conduct underlying their claims. Smash is not mentioned in the "Introductory Statement" or "Statement of Facts" sections of the Complaint. *See* ROA.1449-1450, 1460-1524. That is noteworthy, because those sections contain Plaintiffs' factual allegations. Instead, Smash is identified in the "Jurisdiction" section of the Complaint, where Plaintiffs assert—in conclusory fashion—Smash is subject to the jurisdiction of this Court because "the acts and omissions giving rise to Plaintiffs' claims took place in the State of Mississippi." ROA.1452. Smash is next mentioned in the "Parties" section where Plaintiffs identify him as "Interim Public Works Director for Jackson from approximately May 2016 to October 2017." ROA.1458.

Plaintiffs' averments are devoid of the requisite factual detail and particularity to state a constitutional claim against Smash. "Individual capacity claims against state actors under the civil rights statutes implicate a heightened pleading standard." *Williams*, 2009 U.S. Dist. LEXIS 98114, *6 (citing *Lynch v. Cannatella*, 810 F.2d 1363, 1369-70 (5th Cir. 1987)). That pleading standard

requires more than generic pleadings; it requires Plaintiffs to allege "specific conduct" and "specific facts giving rise to a constitutional violation." *Williams*, 2009 U.S. Dist. LEXIS 98114, *7, *10.

Plaintiffs fail to identify even one of Smash's alleged acts or omissions that led to their injuries. And, Smash may not be held individually liable for the conduct of other government officials. *See generally Burge v. Parish of St. Tammany*, 187 F.3d 452, 466 (5th Cir. 1999) ("Official capacity suits generally represent another way of pleading an action against an entity of which an officer is an agent."). The Complaint fails to state a claim against Smash.

*Williams* is on point. The *Williams* Court found the plaintiffs' factual allegations were insufficient to state a constitutional claim because they did not "state what, if anything, any of the [i]ndividual [d]efendants said or did" that gave rise to the plaintiffs' claims. *Id.* at *10. The *Williams* court specifically noted the plaintiffs' pleadings were insufficient because they failed to show how each defendant was involved in the decisions giving rise to the asserted claims. *Id.*

## VI. The Court should decline to exercise supplemental jurisdiction over Plaintiffs' state law claims under Section 1367.

In the Fifth Circuit, courts determine whether dismissal is appropriate under 28 U.S.C. § 1367(c)(3), "by assessing the common-law factors of judicial economy, convenience, fairness, and comity." *Manyweather v. Woodlawn Manor, Inc.*, 40 F.4th 237, 246 (5th Cir. 2022) (affirming remand after dismissal of federal

claims).  Applying those factors, the Fifth Circuit has generally held courts

"should decline to exercise jurisdiction over remaining state-law claims when all

federal-law claims are eliminated before trial."  *Id.*  That is especially true should

the court dismiss the matter during the pleading stage. *See id.*  Should the Court

affirm dismiss of Plaintiffs' claims over which federal courts have original

jurisdiction at the pleading stage, the Court should also affirm dismissal of

Plaintiffs' state law claims.

## CONCLUSION

For the foregoing reasons, the District Court's Final Judgment should be

affirmed.

Respectfully submitted, this 11th day of December, 2024

<div style="margin-left:40%">

*/s/ Clarence Webster, III*

Clarence Webster, III (MSB No. 102111)
Kaytie M. Pickett (MSB No. 103202)
Adam Stone (MSB No. 10412)
Abbey A. Reeves (MSB No. 105720)
Dakota J. Stephens (MSB No. 106695)
3100 North State Street, Ste. 300 (39216)
P.O. Box 427
Jackson, MS 39205-0427
Tel: (601) 949-4900
cwebster@joneswalker.com
kpickett@joneswalker.com
astone@joneswalker.com
areeves@joneswalker.com
dstephens@joneswalker.com

Sheridan A. Carr (MSB No. 106276)
Office of City Attorney

</div>

P.O. Box 2779
Jackson, MS 39207
Tel: (601) 960-1799
scarr@jacksonms.gov

John F. Hawkins (MSB No. 9556)
Hawkins Law, P.C.
226 North President Street (39201)
P.O. Box 24627
Jackson, MS 39225-4627
Tel: (601) 969-9692
john@hgattorneys.com

*Counsel for the City of Jackson*

*/s/ John F. Hawkins*
John F. Hawkins (MSB No. 9556)
Hawkins Law, P.C.
226 North President Street (39201)
P.O. Box 24627
Jackson, MS 39225-4627
Tel: (601) 969-9692
john@hgattorneys.com

*Counsel for Chokwe A. Lumumba and Robert Miller*

*/s/ Terris C. Harris*
Terris C. Harris (MSB No. 99433)
The Cochran Firm-Jackson, LLC
197 Charmant Place, Suite 2
Ridgeland, MS 39157
Tel: (601) 790-7600
tharris@cochranfirm.com

*Counsel for Tony Yarber, Kishia Powell and Jerriot Smash*

## <u>CERTIFICATE OF SERVICE</u>

I, Clarence Webster, III, attorney for Appellees hereby certify that I have this day caused to be delivered the foregoing document via the ECF electronic system to all counsel of record.

So certified, this the 11th day of December, 2024.

*/s/ Clarence Webster, III*
Clarence Webster, III

## CERTIFICATE OF COMPLIANCE

1.     This brief complies with the word limit of Federal Rule of Appellate Procedure 32(, because it contains 13,120 words as determined by the word-count function of M365.

2.     This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type style requirements of Federal Rule of Appellate Procedure 32(a)(6) because it has been prepared in a proportionally spaced typeface using M365 in 14-point Times New Roman font.

*/s/ Clarence Webster, III*
Clarence Webster, III

## CERTIFICATE OF ELECTRONIC COMPLIANCE

I hereby certify that, in the foregoing brief filed using the Fifth Circuit CM/ECF document filing system, (1) the privacy redactions required by Fifth Circuit Rule 25.2.13 have been made, (2) the electronic submission is an exact copy of the paper document, and (3) the document has been scanned for viruses with the most recent version of SentinelOne and is free of viruses.

*/s/ Clarence Webster, III*
Clarence Webster, III