# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit
**FILED**
September 4, 2026
Lyle W. Cayce
Clerk

No. 24-60370

Priscilla Sterling, *individually and on behalf of all others similarly situated*; Raine Becker, *individually and on behalf of all others similarly situated*; Shawn Miller, *individually and on behalf of all others similarly situated*; John Bennett,

*Plaintiffs—Appellants*,

*versus*

The City of Jackson, Mississippi; Chokwe A. Lumumba; Tony Yarber; Kishia Powell; Robert Miller; Jerriot Smash; Trilogy Engineering Services, L.L.C.,

*Defendants—Appellees*.

Appeal from the United States District Court
for the Southern District of Mississippi
USDC No. 3:22-CV-531

Before Elrod, *Chief Judge*, and Jones, Smith, Stewart, Richman, Haynes, Higginson, Willett, Ho, Duncan, Engelhardt, Oldham, Wilson, Douglas, and Ramirez, *Circuit Judges*.*

* Judges Southwick and Graves were recused and did not participate in the decision.

Kurt D. Engelhardt, *Circuit Judge*, joined by Elrod, *Chief Judge*, and Jones, Smith, Richman, Willett, Ho, Duncan, Oldham, and Wilson, *Circuit Judges*:

For decades, the Supreme Court has cautioned lower courts to "exercise the utmost care whenever we are asked to break new ground" in the realm of substantive due process. *Dobbs v. Jackson Women's Health Org.*, 597 U.S. 215, 240 (2022) (quoting *Washington v. Glucksberg*, 521 U.S. 702, 720 (1997)). Yet Plaintiffs, residential subscribers to the municipally supplied water service in Jackson, Mississippi, seek recognition of two new constitutional rights lacking any foundation in the history and tradition of our Nation—the right to be free from exposure to contaminated water and the right to accurate information from public officials. The Due Process Clause cannot, for the first time today, provide redress for Plaintiffs' alleged injuries, absent any historical basis for doing so.

Because Plaintiffs' injuries are not constitutionally cognizable, the district court's dismissal of their 42 U.S.C. § 1983 claims is AFFIRMED. The Constitution does not provide redress for every governmental wrongdoing. Rather, the remedy for Plaintiffs' injuries lies in pursuing tort claims, electing representatives who will better manage the public-water system, and petitioning their representatives for other remedies. And Plaintiffs have not been left to go at it alone. The State of Mississippi and federal government have worked for years, and continue today, to improve the City of Jackson's drinking water quality through regulations, investigations, and compliance plans. These already-established-and-undertaken avenues are the proper course for rectifying the lead contamination. We will not expand the Fourteenth Amendment to create novel theories of constitutional liability.

## I.

Plaintiffs Priscilla Sterling, Raine Becker, Shawn Miller, and John Bennett are residents of Jackson, Mississippi, and receive their drinking water from the City of Jackson's public-water system. The City's public-water system is fraught with vexing shortcomings. In recent years, it produced water containing lead, *E. Coli*, and other bacteria, allegedly violated the Safe Drinking Water Act and EPA regulations, shut down and left residents without water for weeks, and necessitated the issuance of dozens of boil-water notices.

Plaintiffs allege[1] that the City, through a series of acts and failures to act, caused lead to leach into Jackson's drinking water. City officials then, despite the presence of lead in the water, incorrectly told residents that the water was safe to drink, despite knowing it likely was not. Plaintiffs allege that these statements induced Plaintiffs to drink lead-contaminated water, which can result in serious and long-lasting health issues, especially in children.

Plaintiffs, individually and on behalf of a putative class of Jackson residents, sued the City of Jackson and various City officials[2] under 42 U.S.C. § 1983, alleging deprivations of their substantive due-process rights.[3] The

---

[1] Because the district court dismissed Plaintiffs' claims under Federal Rule of Civil Procedure 12(b)(6) and 12(c), we accept the well-pleaded facts as true and view those facts in the light most favorable to the Plaintiffs. *Gonzalez v. Kay*, 577 F.3d 600, 603 (5th Cir. 2009).

[2] Plaintiffs named former Interim Public Works Director Jerriot Smash as a defendant but did not make any factual allegations about his involvement in the management of the public-water system. Plaintiffs therefore failed to state a claim against Smash, and the district court properly dismissed all claims against him. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

[3] Plaintiffs also asserted various state-law tort claims against the City, City officials, and Trilogy Engineering Services, L.L.C. After the district court dismissed Plaintiffs'

district court dismissed Plaintiffs' claims for failing to state a § 1983 claim. Plaintiffs appealed, and a panel of our court affirmed in part, reversed in part, and remanded to the district court. *Sterling v. City of Jackson*, 159 F.4th 361 (5th Cir. 2025), *reh'g en banc granted, opinion vacated*, 167 F.4th 806 (5th Cir. 2026). We vacated the panel's opinion and granted rehearing en banc.

II.

Title 42 U.S.C. § 1983 empowers a plaintiff to bring a claim against an individual who, acting under color of state law, violates his federally protected constitutional right. *James v. Tex. Collin County*, 535 F.3d 365, 373 (5th Cir. 2008). Because Plaintiffs claim deprivations of their substantive due-process rights, we must first determine whether the alleged conduct violated any constitutional right. If not, "our inquiry ceases," and the plaintiff may not recover under § 1983. *Whitley v. Hanna*, 726 F.3d 631, 639 (5th Cir. 2013) (internal quotation marks and citation omitted).

The Fourteenth Amendment prohibits the states from depriving "any person of life, liberty, or property, without due process of law." U.S. CONST. amend. XIV, § 1. The Due Process Clause protects certain substantive rights that, while not expressly mentioned in our founding document, are so "deeply rooted in [our] Nation's history and tradition" that the right is implicitly protected by the Constitution. *Timbs v. Indiana*, 586 U.S. 146, 150 (2019) (internal quotation marks and citation omitted).

We have long been under strict instruction to "exercise the utmost care whenever we are asked to break new ground" in the realm of substantive

---

§ 1983 claims, it declined to exercise supplemental jurisdiction over Plaintiffs' state-law claims and dismissed those claims. *See* 28 U.S.C. § 1367(c). Because we affirm the district court's dismissal of Plaintiffs' § 1983 claims, we also affirm the district court's dismissal of the state-law claims without prejudice. *See Brookshire Bros. Holding, Inc. v. Dayco Prods., Inc.*, 554 F.3d 595, 601–02 (5th Cir. 2009).

due process. *Collins v. City of Harker Heights*, 503 U.S. 115, 125 (1992). We are "reluctant to expand the concept of substantive due process because guideposts for responsible decisionmaking in this unchartered area are scarce and open-ended." *Id.*; *see McDonald v. City of Chicago*, 561 U.S. 742, 812 (2010) (Thomas, J., concurring) (describing substantive due process as "a jurisprudence devoid of a guiding principle"). Recognizing this, the Supreme Court has recently—and vigorously—admonished lower courts to adhere to history and tradition when interpreting the Due Process Clause. *Dobbs*, 597 U.S. at 240. History and tradition are the guideposts that prevent "freewheeling judicial policymaking" in which the judiciary dilutes the Constitution from serving as a protector of our most sacred rights to a vehicle by which unelected judges may enact their policy preferences. *Id.*; *Glucksberg*, 521 U.S. at 720. A danger inherent in drawing substantive rights from a constitutional provision that "speaks only to 'process'" is the temptation for a court to rely on "its own, extraconstitutional value preferences" "rather than neutral legal analysis." *Dobbs*, 597 U.S. at 333–34 (Thomas, J., concurring) (internal quotation marks and citations omitted). Doing so "exalts judges at the expense of the People from whom they derive their authority." *Id.* at 333 (internal quotation marks and citation omitted).

To determine whether Plaintiffs allege a violation of a cognizable substantive due-process right, we must first carefully describe the right at issue. *Reno v. Flores*, 507 U.S. 292, 302 (1993) (citing *Collins*, 503 U.S. at 125); *Glucksberg*, 521 U.S. at 721. Rather than accepting broad analogies to an already-established right, we must conduct "an exact analysis" of the present conduct and circumstances and define the right with specificity. *County of Sacramento v. Lewis*, 523 U.S. 833, 850 (1998). We "focus on the allegations in the complaint to determine how [plaintiffs] describe[] the constitutional right at stake and what the [defendants] allegedly did to

deprive [them] of that right." *Collins*, 503 U.S. at 125. Once that right is defined with proper precision, we determine whether the right is "rooted in our Nation's history and tradition and whether it is an essential component of what we have described as 'ordered liberty.'" *Dobbs*, 597 U.S. at 234.

Plaintiffs claim that they were "deprived of their life and liberty within the meaning of the Fourteenth Amendment" when Defendants knowingly contaminated Plaintiffs' drinking water and induced Plaintiffs to drink the water by falsely claiming it was safe to do so. Despite beginning the complaint with the assertion that "[a]ccess to clean, poison-free water is a fundamental human right," Plaintiffs now disclaim reliance on a right to clean water and a right to the provision of competent municipal services. After reviewing the complaint, we find that Plaintiffs allege substantive due-process rights (1) to not be exposed to water that was contaminated as a result of the acts or omissions of public officials and (2) to truthful information from public officials about the presence of contaminants in municipally supplied drinking water. Though important, we discern neither of Plaintiffs' alleged rights deeply rooted in our Nation's history and tradition.

A.

First, Plaintiffs' exposure to lead-contaminated water is not an injury of constitutional proportions sufficient to support a § 1983 claim. *See Lewis*, 523 U.S. at 848 ("[T]he due process guarantee does not entail a body of constitutional law imposing liability whenever someone cloaked with state authority causes harm.").

It is undisputed that the Constitution does not guarantee clean water. Generally, "a State is under no constitutional duty to provide substantive services for those within its border" absent a special relationship. *Youngberg v. Romeo*, 457 U.S. 307, 317 (1982). Even when a municipality provides services such as sewage, water treatment, or waste management, the

Constitution does not require the municipality to provide them "in a reasonably competent fashion." *DeShaney v. Winnebago Cnty. Dep't of Soc. Servs.*, 489 U.S. 189, 197–98 (1989). That is because the Constitution is not "a guarantee of certain minimal levels of safety and security." *Id.* at 195. The Constitution forbids municipalities from depriving individuals of life, liberty, and property without due process of law—it does not impose affirmative obligations on the City. *Id.*; *see Collins*, 503 U.S. at 129 ("The Due Process Clause is not a guarantee against incorrect or ill-advised personnel decisions." (citation modified)).

Acknowledging there is no right to clean water, Plaintiffs instead allege that drinking lead-contaminated water physically injured them, implicating their right to bodily integrity. The state violates an individual's right to bodily integrity when it physically intrudes on his person. *Cruzan ex rel. Cruzan v. Dir., Mo. Dep't of Health*, 497 U.S. 261, 269 (1990). The right to bodily integrity applies to instances of sexual assault by a police officer, *Tyson v. County of Sabine*, 42 F.4th 508, 518–19 (5th Cir. 2022), forced surgical examination, *Union Pac. Ry. Co. v. Botsford*, 141 U.S. 250, 251 (1891), forced stomach-pumping for evidence, *Rochin v. California*, 342 U.S. 165, 166, 172 (1952), and medicating prisoners against their will, *Washington v. Harper*, 494 U.S. 210, 221–22 (1990). But not every governmental action that has an attenuated bodily effect violates that person's right to bodily integrity. *See Glucksberg*, 521 U.S. at 728 (finding no right to physician-assisted suicide). The City's mismanagement of the public-water system resulting in Plaintiffs' lead exposure is wholly different from forced surgery, involuntary medicating, and assault. We are skeptical that the right to not be harmed by lead-contaminated water fits within the right to bodily integrity, and Plaintiffs point us to no historical tradition or Supreme Court precedent convincing us

otherwise.[4] *See id.* at 721–22 (requiring a "restrained methodology" and "concrete examples" of fundamental rights). We are therefore "extremely reluctant to breathe . . . further substantive content into the Due Process Clause" under the guise of bodily integrity. *Michael H. v. Gerald D.*, 491 U.S. 110, 122 (1989) (internal quotation marks and citation omitted). Because exposure to contaminated water is not the sort of injury recognized by the right to bodily integrity, Plaintiffs' § 1983 claim fails.[5]

B.

Second, we find no deeply rooted history or tradition establishing a constitutional right to truthful information from officials during a public-health crisis. Plaintiffs point to no binding precedent, and we have found none, allowing recovery under § 1983 for misrepresentations by public

---

[4] Plaintiffs point to *County of Sacramento v. Lewis*, 523 U.S. 833 (1998), as the "clearest and most fundamental guidance on this case." In *Lewis*, the Supreme Court clarified the level of culpability necessary to establish a substantive due-process violation and found none where police engaged in a high-speed chase without intent to harm suspects and killed an individual. *Id.* at 854. Apart from general rule statements about a defendant's mental state and looking to the context and circumstances of government conduct, *Lewis* provides no guidance on whether the facts here implicate a substantive due-process right. That *Lewis* is Plaintiffs' proffered "clearest . . . guidance" only furthers our belief that no Supreme Court case has ever recognized a substantive due-process right on facts such as these.

[5] In *Guertin v. Michigan*, 912 F.3d 907, 920–21 (6th Cir. 2019), the Sixth Circuit held that plaintiffs plausibly alleged that public officials' actions during the Flint Water Crisis violated plaintiffs' right to bodily integrity. We are not bound, nor persuaded, by *Guertin*. The Sixth Circuit surveyed bodily-integrity precedent and found the right "indispensable," a "first among equals," with an "impressive constitutional pedigree." *Guertin*, 912 F.3d at 918–19 (internal quotation marks and citation omitted). We do not disagree that the right to bodily integrity is an important right. It is *because* the right to autonomy over one's person is so fundamental to our liberty that we are reluctant to weaken the right by applying it to conduct that would not have violated the Constitution when the Fourteenth Amendment was adopted. *Guertin* does not persuade us that Defendants' conduct resulting in Plaintiffs' exposure to contaminated water implicates the right to bodily integrity.

officials. *Reno*, 507 U.S. at 303 ("The mere novelty of such a claim is reason enough to doubt that 'substantive due process' sustains it.").

Two Second Circuit cases, *Lombardi v. Whitman*, 485 F.3d 73 (2d Cir. 2007), and *Benzman v. Whitman*, 523 F.3d 119 (2d Cir. 2008), addressed alleged misrepresentations by public officials about the air quality in New York City following the September 11, 2001, terrorist attacks. In both, the court found no constitutional violation and noted its hesitancy in expanding substantive due process to cover statements by public officials. *Lombardi*, 485 F.3d at 85; *id.* at 80 (stating that the closest case on point "is not particularly close"); *Benzman*, 523 F.3d at 128; *id.* at 125 (recognizing that "no court has ever held a government official liable for denying substantive due process by issuing press releases or making public statements"). We too decline to expand substantive due process to render public officials liable for statements made during an evolving public crisis.[6]

The Supreme Court has recognized certain substantive due-process rights to be encompassed within the common-law right to informed consent. *See Cruzan*, 497 U.S. at 277 (right to refuse medical treatment); *Rochin*, 342 U.S. at 172 (forced stomach pumping to extract evidence violated the Due Process Clause). But the informed-consent caselaw does not establish a right to receive truthful information from public officials about lead levels in drinking water. Accurate information from City officials may have allowed Plaintiffs to make more informed decisions about where to source their drinking water. But after conducting "an exact analysis" of the present

[6] We are similarly unpersuaded by the Sixth Circuit's decision in *Mitchell v. City of Benton Harbor*, which held that plaintiffs plausibly alleged a § 1983 claim based on city officials' alleged misrepresentations about water quality. 137 F.4th 420, 437 (6th Cir. 2025). *Mitchell* relied in large part on *Guertin*—which we disagree with for reasons set forth *supra* note 5. *Id.* at 430–32, 437.

circumstances, it is clear that lying about the presence of lead in the water is a far cry from the state's physically extracting evidence from a criminal suspect or conducting an invasive medical procedure without consent. *Lewis*, 523 U.S. at 850. We therefore decline to accept Plaintiffs' invitation to frame the City officials' lies as a lack of informed consent.

Of course, public officials are expected to be honest with their constituents, especially when the constituents' safety is at risk. But when interpreting the Due Process Clause, "we must guard against the natural human tendency to confuse" what the Fourteenth Amendment protects with "our own ardent views about the liberty that Americans should enjoy." *Dobbs*, 597 U.S. at 239. While truthful information is desirable, without a historical analog recognizing a constitutional right to accurate information from public officials, we cannot read such a right into the Constitution in the first instance.

* * *

Plaintiffs allege serious government misfeasance, and we are sympathetic to the injuries they may suffer as a result. But our sympathies cannot be the basis for transforming quintessential tort claims into 42 U.S.C. § 1983 claims. *DeShaney*, 489 U.S. at 202–03. The Constitution does not provide a remedy for Plaintiffs' injuries. But that does not mean they are without a remedy. Plaintiffs may pursue tort claims against Defendants, elect officials who will better manage the water system and provide accurate information to the public, or petition their state and federal legislatures for other remedies.[7] *See Glucksberg*, 521 U.S. at 720 (instructing courts to be

---

[7] While Plaintiffs have remedies available to address their injuries, they have not been left to combat the water system's deficiencies alone. Plaintiffs acknowledge that multiple state and federal agencies have taken action to bring the City's water within federal standards. The EPA and Mississippi State Department of Health monitored the City's

careful when creating new substantive due-process rights because doing so "place[s] the matter outside the arena of public debate and legislative action"); *Dobbs*, 597 U.S. at 268–69 (creating new substantive due-process rights "short-circuit[s] the democratic process"); *DeShaney*, 489 U.S. at 203 (refusing to "thrust" a new system of liability upon the people by expanding the Due Process Clause, especially when they could create such a system themselves through "the regular lawmaking process").

We hold that Plaintiffs fail to allege a cognizable violation of their substantive due-process rights. Defendants' actions allegedly deprived Plaintiffs of clean water and guileless information. These deprivations, while grievous, do not infringe upon any deeply rooted constitutional right. The district court therefore did not err in dismissing Plaintiffs' 42 U.S.C. § 1983 claims. *See Becerra v. Asher*, 105 F.3d 1042, 1048 (5th Cir. 1997) ("Without an underlying constitutional violation, an essential element of municipal liability is missing.").

III.

Because Plaintiffs fail to allege an injury of constitutional dimensions, their § 1983 claims fail. But even if Plaintiffs could plausibly allege a violation of any substantive due-process right, they fail to allege a violation of a clearly established right, so the City officials would be entitled to qualified immunity.

---

water for years, conducted investigations, and ordered the City to take specific measures to decrease lead levels. The federal government has now assumed management of the public-water system to ensure residents consistently receive clean drinking water. *See* Complaint, *United States v. City of Jackson*, No. 3:22-CV-00686 (S.D. Miss. Nov. 29, 2022) (asserting claims against the City for violations of the Safe Water Drinking Act, Clean Water Act, and Mississippi law). The numerous avenues that the Plaintiffs, state, and federal government have available (and have already taken) to address the lead levels show that Plaintiffs' injuries may be remedied despite the unavailability of a § 1983 claim.

"Qualified immunity shields federal and state officials from money damages unless a plaintiff pleads facts showing (1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct." *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). A right is clearly established only if it "is sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Mullenix v. Luna*, 577 U.S. 7, 11–12 (2015) (internal quotation marks and citation omitted).[8] Plaintiffs must point to controlling authority or "a robust consensus of cases of persuasive authority" holding that a right is clearly established. *al-Kidd*, 563 U.S. at 742 (internal quotation marks and citation omitted). "We do not require a case directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate." *Id.* at 741.

In analyzing the right at issue, we may not "define clearly established law at a high level of generality." *Id.* at 742. Rather, we must consider "in light of the specific context of the case," whether the particular conduct at issue violates a clearly established right. *Brosseau v. Haugen*, 543 U.S. 194, 198 (2004) (per curiam) (internal quotation marks and citation omitted).

We find no controlling authority nor robust consensus of persuasive authority that clearly establishes a right to lead-free drinking water and truthful information from public officials. Plaintiffs' generalized analogies to

[8] Additionally, a plaintiff "may demonstrate 'the rare "obvious case," where the unlawfulness of the officer's conduct is sufficiently clear even though existing precedent does not address similar circumstances.'" *Dilworth v. Tucker*, No. 25-60414, 2026 WL 1892138, at *2 (5th Cir. July 1, 2026) (quoting *Batyukova v. Doege*, 994 F.3d 717, 726 (5th Cir. 2021)). This is not an obvious case.

the Supreme Court's bodily-integrity jurisprudence fail to show that the specific conduct at issue violated a clearly established right.[9]

* * *

Because Plaintiffs do not allege a violation of a cognizable substantive due-process right, the dismissal of Plaintiffs' 42 U.S.C. § 1983 claims is AFFIRMED.

[9] Even if we agreed with the Sixth Circuit's decision in *Guertin*, and even if we assumed that other circuit's case law can clearly establish the law in our circuit, and even if we also assumed that the *Guertin* defendants' conduct in the Flint Water Crisis was similar to the conduct alleged here, *Guertin* would not clearly establish a violation of Plaintiffs' constitutional rights. 912 F.3d 907. ***See* Plaintiffs En Banc Br. at 44–45.** *Guertin* was decided in 2019—after the bulk of the conduct here occurred—so it cannot clearly establish that the City officials' conduct was unlawful. *See Harper v. Harris County*, 21 F.3d 597, 600 (5th Cir. 1994) (whether official violated a clearly established right is determined at the time of the conduct in question).

HAYNES, *Circuit Judge*, concurring in part and dissenting in part, joined by STEWART, HIGGINSON, DOUGLAS, and RAMIREZ, *Circuit Judges*:

Because this case comes to us from the district court's dismissal of Plaintiffs' complaint based on the pleadings, the standard of review is of paramount importance. We apply the same standard of review when considering Rule 12(b)(6) and Rule 12(c) motions—we must accept all well-pleaded facts as true and view those facts in the light most favorable to Plaintiffs. *See Q Clothier New Orleans, L.L.C. v. Twin City Fire Ins. Co.*, 29 F.4th 252, 256 (5th Cir. 2022); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007))). Not only that, but we *must* resolve "[*a*]*ll* questions of fact and *any* ambiguities in the current controlling substantive law . . . in . . . [Plaintiffs'] favor." *Lewis v. Fresne*, 252 F.3d 352, 357 (5th Cir. 2001) (emphasis added); *see also Walker v. Beaumont Indep. Sch. Dist.*, 938 F.3d 724, 735 (5th Cir. 2019). "A complaint survives a motion to dismiss only if it 'pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Meador v. Apple, Inc.*, 911 F.3d 260, 264 (5th Cir. 2018) (quoting *Iqbal*, 556 U.S. at 678).

This standard of review informs our view of Plaintiffs' allegations. To that end, this matter concerns lead—how the City of Jackson introduced it to and exacerbated its presence within the water supply (e.g., former City Mayor Yarber was "aware" that the City's "water treatment plants were incapable of adequately treating the water" to "prevent corrosion of [the City's] water pipes," yet he scrapped plans for improving, and affirmatively worsened, the situation); and how the City misled and withheld information from residents, including Plaintiffs, about the dangers its presence in their water posed to their health. As a result of the City's actions, Plaintiffs will be

forced to contend with the lifelong effects of ingesting this lead.[1] Several of Plaintiff Priscilla Sterling's children "have been diagnosed with lead poisoning," while Plaintiffs Shawn Miller and John Bennett, alongside their respective households, "are exhibiting effects of lead-poisoning or other water contamination." At bottom, the well-pleaded factual allegations in Plaintiffs' complaint, which we *must* accept as true, *see Q Clothier*, 29 F.4th at 256, mirror in various ways one of the worst public health crises in recent American history—the Flint water crisis, *see Guertin v. Michigan*, 912 F.3d 907, 915, 918–32 (6th Cir. 2019).

In response to the City's actions, Plaintiffs brought, *inter alia*, two claims under 42 U.S.C. § 1983 against the City and City officials for violating Plaintiffs' Fourteenth Amendment substantive due process rights: specifically, Plaintiffs' rights to bodily integrity and to be protected from state-created dangers. The panel majority opinion (1) concluded that Plaintiffs adequately alleged that the City, acting with deliberate indifference, violated their constitutional right to bodily integrity, and (2) adopted the state-created danger theory as viable and remanded for the district court to consider whether Plaintiffs plausibly alleged a state-created danger claim against the City. *See Sterling v. City of Jackson*, 159 F.4th 361, 373–86 (5th Cir. 2025), *reh'g en banc granted, opinion vacated*, 167 F.4th 806 (5th Cir. 2026). The en banc majority opinion, meanwhile, reasons that Plaintiffs' substantive due process claims are not cognizable. Because I disagree, and Plaintiffs are

[1] It is worth underscoring that ingesting lead causes various, serious health consequences. Lead is particularly harmful to children, for whom lead exposure can affect brain development and nervous system health, though it is also harmful to adults, who can suffer (among other impacts) cardiovascular problems and increased blood pressure.

(at the very least) entitled to discovery for their plausibly pleaded allegations against the City, I must respectfully dissent.[2]

## I. State-Created Danger

I start with what the en banc majority opinion omits. If one were to read only the en banc majority opinion, they could be forgiven for misunderstanding Plaintiffs' allegations and concluding that, as far as their Fourteenth Amendment claims go, Plaintiffs solely "allege[d] substantive due-process rights (1) to not be exposed to water that was contaminated as a result of the acts or omissions of public officials and (2) to truthful information from public officials about the presence of contaminants in municipally supplied drinking water." However, Plaintiffs "filed a class action asserting *two* substantive due process claims—bodily integrity *and state-created danger*." *Sterling*, 159 F.4th at 371 (emphasis added). Much ink was spilled on the latter of these claims at the panel stage,[3] though, curiously, there is no mention of the state-created danger theory in the en banc majority opinion. This is especially confounding because Plaintiffs *expressly* claimed that they have "a clearly established right under the substantive due process

---

[2] I agree with the en banc majority opinion that the City official defendants are entitled to qualified immunity, as there is neither controlling authority nor a robust consensus of persuasive authority that clearly establishes the rights on which Plaintiffs rely in this context. *See id.* at 384–85 (bodily integrity claim); *id.* at 386 (state-created danger claim). However, on Plaintiffs' state-law claims, I would vacate the district court's dismissal and remand for further consideration. *See id.* at 387.

[3] *See id.* at 385–86 (considering "Plaintiffs' second Due Process Clause claim[, which] asserts Defendants violated Plaintiffs' right to be free from state-created danger"); *id.* at 399–402 (DENNIS, J., concurring in part and dissenting in part) (analyzing Plaintiffs' additional "plead[ing] that the City of Jackson's own actions created or increased the danger that culminated in their harm," which "could plausibly implicate the state-created danger doctrine"); *id.* at 419–24 (ENGELHARDT, J., dissenting) (stating "Plaintiffs originally offered another theory of recovery: state-created danger" and discussing "the state-created danger theory").

clause of the Fourteenth Amendment to the United States Constitution to be protected from risks, dangers, dangerous situations, or being made more vulnerable to increased risk of harms, affirmatively created and/or caused by persons acting under color of state law." Plaintiffs have diligently pressed state-created danger arguments throughout this litigation,[4] and we heard oral argument, including from amici, on this issue. In short, the issue of state-created danger is squarely before us.

"The Due Process Clause of the Fourteenth Amendment does not, as a general matter, require the government to protect its citizens from the acts of private actors." *McKinney v. Irving Indep. Sch. Dist.*, 309 F.3d 308, 312 (5th Cir. 2002) (citing *DeShaney v. Winnebago Cnty. Dep't of Soc. Servs.*, 489 U.S. 189, 195 (1989)); *see also Fisher*, 73 F.4th at 368–69 (recognizing same). However, the Supreme Court has instructed that this "general rule is not absolute." *McKinney*, 309 F.3d at 312–13. "It is true that in certain limited circumstances the Constitution imposes upon the State affirmative duties of care and protection with respect to particular individuals." *Id.* (quoting *DeShaney*, 489 U.S. at 198). To that end, "a number of our sister circuits have adopted a state-created danger exception to the general rule, under which a state actor who knowingly places a citizen in danger may be accountable for the foreseeable injuries that result." *Id.* at 313 (citation modified).

---

[4] Unlike in *Fisher v. Moore*, where we highlighted a lack of "meticulous briefing on how state-created danger liability meets today's reinvigorated test" for substantive due process rights, 73 F.4th 367, 374 (5th Cir. 2023), throughout this case we have received extensive briefing on this issue. Indeed, responding to our opinion in *Fisher*, Plaintiffs expressed that they "readily accept[ed our] invitation" to "provide 'meticulous briefing on how the state-created danger liability meets today[']s reinvigorated test'" for substantive due process rights.

To say today that "a number of our sister circuits have adopted [the] state-created danger" doctrine risks understating the point. *Id.* (citation modified). Rather, as JUDGE DENNIS ably highlighted, *ten* of our sister circuits have adopted this doctrine. *See Sterling*, 159 F.4th at 400 (DENNIS, J., concurring in part and dissenting in part) (collecting cases from the First, Second, Third, Fourth, Sixth, Seventh, Eighth, Ninth, Tenth, and D.C. Circuits applying the state-created danger doctrine); *see also Irish v. Fowler*, 979 F.3d 65, 73–74 (1st Cir. 2020) (documenting adoption among the circuit courts of the state-created danger doctrine).[5] In contrast, our court stands practically alone in its decades-long fence-sitting, declining to either adopt or definitively rule out the state-created danger doctrine. *See Fisher*, 73 F.4th at 372 & n.13; *id.* at 376 (HIGGINSON & DOUGLAS, JJ., dissenting from denial of rehearing en banc). Our equivocation, which is made only more noticeable by the fact that the *vast majority* of our sister circuits have applied the state-created danger doctrine, often for many years,[6] "is a disservice to injured plaintiffs who are forced to litigate in endless uncertainty about their federal rights." *Id.* at 376 (HIGGINSON & DOUGLAS, JJ., dissenting from denial of rehearing en banc).

To avoid prolonging this "disservice," *id.*, I thus turn to the state-created danger doctrine's viability. As the panel majority opinion did, I would adopt the doctrine. *See Sterling*, 159 F.4th at 386. There is more than

---

[5] The First Circuit has also noted that, "[t]hough the Eleventh Circuit no longer has a discrete 'state-created danger doctrine,' it also does not bar recovery in cases like th[e] one" then before the First Circuit (i.e., where plaintiffs pressed a "substantive due process state-created danger claim" based on police officers' actions and inactions). *Irish*, 979 F.3d at 67–68, 78 n.7 (citing *Waddell v. Hendry Cnty. Sheriff's Off.*, 329 F.3d 1300, 1305–06 (11th Cir. 2003)).

[6] *See Sterling*, 159 F.4th at 400 (DENNIS, J., concurring in part and dissenting in part) (citing, *inter alia*, *Butera v. District of Columbia*, 235 F.3d 637, 652 (D.C. Cir. 2001); and then *Kennedy v. City of Ridgefield*, 439 F.3d 1055, 1066 (9th Cir. 2006)).

sufficient textual and historical support for adopting the doctrine.[7] Further, while our sister circuits' opinions on this issue do not bind us, their near-unanimity in adopting this doctrine further supports our doing the same. *See Irish*, 979 F.3d at 73–74. We have kicked this proverbial can down the road for long enough—based on the abovementioned factors, I would adopt the state-created danger doctrine as viable.

## II. Bodily Integrity

In addition to their state-created danger claim, Plaintiffs argue that Defendants' conduct "endangered and/or threatened Plaintiffs' fundamental liberty interest to bodily integrity as guaranteed by the Due Process Clause of the Fourteenth Amendment to the United States Constitution." As noted above, the en banc majority opinion reasons that Plaintiffs "allege[d] substantive due-process rights (1) to not be exposed to water that was contaminated as a result of the acts or omissions of public officials and (2) to truthful information from public officials about the presence of contaminants in municipally supplied drinking water," and it concludes that Plaintiffs' claim based on the first right fails "[b]ecause

[7] *See DeShaney*, 489 U.S. at 201 (noting that, "[w]hile the State may have been aware of the dangers that Joshua faced in the free world, it played no part in their creation, nor did it do anything to render him any more vulnerable to them," and, "[t]hat the State once took temporary custody of Joshua does not alter the analysis, for when it returned him to his father's custody, it placed him in no worse position than that in which he would have been had it not acted at all," before concluding that "[u]nder these circumstances, the State had no constitutional duty to protect Joshua"); *Kennedy*, 439 F.3d at 1061 n.1 (discussing the state-created danger doctrine's pre-*DeShaney* roots and explaining that *DeShaney* is "more reasonably understood as an acknowledgment and preservation of the doctrine, rather than its source"); *see also Sterling*, 159 F.4th at 399–400 (Dennis, J., concurring in part and dissenting in part) (discussing the doctrine's historical roots, § 1983, and citing David Pruessner, *The Forgotten Foundation of State–Created Danger Claims*, 20 Rev. Litig. 357 (2001)); *Owens v. Okure*, 488 U.S. 235, 249 n.11 (1989) (discussing § 1983's legislative history).

exposure to contaminated water is not the sort of injury recognized by the right to bodily integrity." I respectfully disagree with the en banc majority opinion's approach.

"No right is held more sacred, or is more carefully guarded by the common law, than the right of every individual to the possession and control of his own person, free from all restraint or interference of others, unless by clear and unquestionable authority of law." *Union Pac. R. Co. v. Botsford*, 141 U.S. 250, 251 (1891) ("The right to one's person may be said to be a right of complete immunity; to be let alone." (citation omitted)). This "sacred" right, *id.*, the right to bodily integrity, is assiduously protected under the Due Process Clause of the Fourteenth Amendment, *see Ingraham v. Wright*, 430 U.S. 651, 673–74 (1977); *see also Tyson v. Sabine*, 42 F.4th 508, 517 (5th Cir. 2022) (recognizing that "[t]he substantive component of the Due Process Clause under the Fourteenth Amendment secures the right to be free of state-occasioned damage to a person's bodily integrity" (citation modified)). To properly state their substantive due process claim here, Plaintiffs needed to demonstrate that they suffered a deprivation of a cognizable constitutional right and that the City acted with deliberate indifference to Plaintiffs' right. *See M.D. ex rel. Stukenberg v. Abbott*, 907 F.3d 237, 248 (5th Cir. 2018).

As the en banc majority opinion notes, the Supreme Court has explained that courts must "exercise the utmost care whenever [they] are asked to break new ground in th[e] field" of substantive due process, "lest the liberty protected by the Due Process Clause be subtly transformed into the policy preferences of" judges. *Dobbs v. Jackson Women's Health Org.*, 597 U.S. 215, 240 (2022) (quoting *Washington v. Glucksberg*, 521 U.S. 702, 720 (1997)). However, the Supreme Court has not displaced the historically long-recognized right to bodily integrity. The Court itself declared in *Dobbs* that it was not "cast[ing] doubt on precedents that do not concern abortion." *Id.* at 290; *see also Tyson*, 42 F.4th at 517 n.4 (acknowledging same). Likewise,

members of the Court have unambiguously underscored that "*Dobbs* calls into question *neither the doctrine of substantive due process nor the other unexpressed rights that the doctrine protects*." *Mirabelli v. Bonta*, 607 U.S. 492, 499–500 (2026) (BARRETT, J., concurring) (emphasis added). Thus, while *Dobbs* guides us in our careful approach to assessing substantive due process claims, it does not foreclose a determination that Plaintiffs have plausibly alleged violations of their right to bodily integrity.

To that end, and taking their well-pleaded factual allegations as true, *see Q Clothier*, 29 F.4th at 256, Plaintiffs have plausibly alleged a cognizable claim for a constitutional injury in this case.[8] Their second amended complaint plausibly lays out various factual allegations against the City, ranging from the City's "catastrophic" switch from high-pH well water to low-pH surface water (which "caused a serious increase in lead levels"),[9] to its "false and misleading statements" regarding the safety of residents' water (e.g., certain City officials "told the press and public that [the City's] drinking water [was] 'not unsafe' to drink," despite such statements being "false"), and its decision to "not reveal" a 2020 EPA Emergency Administrative Order, which detailed "numerous violations" in the City's public water system, "for a year."[10] None dispute that the right to bodily

[8] As noted in the panel majority opinion, *Lombardi v. Whitman*, 485 F.3d 73 (2d Cir. 2007), and *Benzman v. Whitman*, 523 F.3d 119 (2d Cir. 2008), are distinguishable from this case, as those cases dealt with emergency situations involving rapidly evolving information, whereas this matter concerns a City-created catastrophe that unfolded over years. *See Sterling*, 159 F.4th at 382–83 (citing, *inter alia*, *Lombardi*, 485 F.3d at 82).

[9] On this point, Plaintiffs allege that "[t]here was no information or studies that supported the advisability of the switch or suggested that it would be safe under the circumstances."

[10] Per Plaintiffs' complaint, a City council member commented on this point that "the unwillingness of the [C]ity to share with citizens information related to safe drinking water is very troubling."

integrity is longstanding and well-established under the Due Process Clause, *see Ingraham*, 430 U.S. at 673, and it is a natural extension of Supreme Court precedent to conclude that Plaintiffs' plausible factual allegations implicate the same right,[11] *see Cruzan ex rel. Cruzan v. Dir., Mo. Dep't of Health*, 497 U.S. 261, 279 (1990) ("[F]or purposes of this case, we assume that the United States Constitution would grant a competent person a constitutionally protected right to *refuse lifesaving hydration* and nutrition." (emphasis added)).[12] Therefore, and for the additional reasons articulated in the panel majority opinion, Plaintiffs have stated a plausible claim that the City violated their right to bodily integrity. *See Sterling*, 159 F.4th at 377–84 (discussing, *inter alia*, Plaintiffs' plausible allegations that the City acted with deliberate indifference).

---

[11] As the Supreme Court has noted, "[l]ead and its compounds are toxic to human beings." *Steiner v. Mitchell*, 350 U.S. 247, 249 (1956). To that end, the nature of this matter—lead introduced to Plaintiffs' water supply without their consent—is arguably more egregious than some of the situations considered by the Supreme Court in its other cases involving alleged violations of the right to bodily integrity. Put differently, lead is distinguishable from *therapeutic medicines*, the nonconsensual administration of which the Court has found to violate the right to bodily integrity. *See Washington v. Harper*, 494 U.S. 210, 221–22 (1990) ("We have no doubt that . . . respondent possesses a significant liberty interest in avoiding the *unwanted administration* of *antipsychotic drugs* under the Due Process Clause of the Fourteenth Amendment." (emphasis added)).

[12] While the en banc majority opinion discounts it, the Sixth Circuit's well-reasoned opinion in *Guertin* reaches this same conclusion. *See* 912 F.3d at 920–21 ("Involuntarily subjecting nonconsenting individuals to foreign substances with no known therapeutic value—often under false pretenses and with deceptive practices hiding the nature of the interference—is a classic example of invading the core of the bodily integrity protection."); *see also Ablordeppey v. Walsh*, 85 F.4th 27, 34 (1st Cir. 2023) (citing *Guertin*, 912 F.3d at 919, and explaining that "[t]ypical bodily integrity cases include forcibly administering medication or exposing individuals to experimental treatments (such as nuclear-level radiation) without consent").

* * *

For the foregoing reasons, I respectfully dissent. At a minimum, Plaintiffs are entitled to discovery on their sufficiently plausible allegations that the City violated their constitutional rights, and the proper course is for this case to be remanded to the district court to allow such discovery to occur.[13]

[13] On this, JUDGE SUTTON's concurrence in the denial of en banc rehearing in *Guertin v. Michigan*, 924 F.3d 309 (6th Cir. 2019), is instructive. Despite questioning various facets of the original *Guertin* majority opinion, *see id.* at 311–14 (SUTTON, J., concurring in the denial of rehearing en banc), JUDGE SUTTON reasoned that, "[a]t the pleading stage of a case, plaintiffs are entitled to make plausible allegations in their complaint and use the discovery process to ferret out support for their preferred account through depositions, emails, and documents," *id.* at 311 (SUTTON, J., concurring in the denial of rehearing en banc). As such, he aptly explained that, "[a]t this early stage of the case, [the Sixth Circuit] must *give the benefit of the doubt* to the plaintiffs' preferred theory of the case and *allow the discovery process to determine whether plausible allegations in their complaint mature* into fact-supported allegations." *Id.* (emphasis added). As in *Guertin*, Plaintiffs here have more than plausibly alleged constitutional violations by the City. Therefore, "th[is] case must proceed." *Id.*